416 So.2d 231 (1982)
BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS, et al.
v.
LOUISIANA COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. 14846.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
Rehearing Denied July 13, 1982.
*232 Charles M. Lanier, New Orleans, for plaintiff-appellant Board of Com'rs of the Port of New Orleans, Leander N. Bubrig, J. W. Clark, G. Frank Purvis, Jr., C. Alvin Bertel, Jr., Norman R. Kerth, Roy J. Gross, Joseph J. Krebs, Jr., and Michael J. Molony, Jr.
Mack E. Barham, David A. Marcello, Jacob J. Meyer, New Orleans, for Joseph C. Domino.
Walter J. Leger, Jr., New Orleans, for George J. Schiro.
R. Gray Sexton, Baton Rouge, for defendant-appellee Com'n on Ethics for Public Employees.
David Williams, Asst. Atty. Gen., Baton Rouge, for William J. Guste, Jr., Atty. Gen. for the State of La.
Ronald G. Coleman, Baton Rouge, for amicus curiae.
Before LEAR, CARTER and LANIER, JJ.
LANIER, Judge.
This is a suit for declaratory judgment and preliminary and permanent injunctive relief filed by the Board of Commissioners of the Port of New Orleans (hereinafter referred to as the Dock Board) and its seven *233 commissioners, individually, against the Commission on Ethics for Public Employees (hereinafter referred to as Ethics Commission) seeking to stop the Ethics Commission from conducting private investigations of the business affairs of the Dock Board members on the grounds that the Code of Governmental Ethics of the State of Louisiana (hereinafter referred to as the Code), La.R.S. 42:1101 et seq., is not applicable to the individual Dock Board members. The Ethics Commission filed a dilatory exception of prematurity and peremptory exceptions of no right of action and no cause of action. The declinatory exception of prematurity asserts that the Code is applicable to the Dock Board members and that they have failed to exhaust their administrative remedies. The peremptory exception of no cause of action alleges that the petition failed to state facts supporting the conclusion that the challenged provisions of the Code were unconstitutional or why the plaintiffs were exempt from the provisions of the Code. The exception of no right of action alleges that the Dock Board as a legal entity had no justiciable interest in this litigation because the Code is only applicable to the individual members of the Dock Board. The trial judge fixed the hearing on these exceptions on the same day as the trial of the preliminary injunction, but tried the exceptions first. After hearing evidence on the exceptions, the trial judge sustained the exception of prematurity and the exception of no right of action and vacated the rule for the preliminary injunction. Because of his rulings on the exceptions of prematurity and no right of action, the trial judge determined there was no necessity to rule on the exception of no cause of action. The Dock Board was cast for all costs of the proceedings. The Dock Board and its members took this devolutive appeal.[1] The Ethics Commission answered this devolutive appeal seeking damages for frivolous appeal.

I. FACTS
By letter dated December 17, 1979, the Louisiana Commission on Governmental Ethics (the predecessor of the present Commission on Ethics for Public Employees) advised the Executive Director and General Manager of the Dock Board of its rendition of Opinion No. 37 and transmitted a copy of this opinion.[2] Opinion No. 37 interpreted the existing Code of Ethics[3] as prohibiting members of State Boards and Commissions from rendering goods and services on a contractual basis to firms doing business with the Board or Commission upon which the individual members served and further prohibited members of State Boards and Commissions from doing business with or contracting with firms or businesses which conducted operations governed or regulated by the Board or Commission upon which the individual member served. By letter dated February 8, 1980, the Louisiana Commission on Governmental Ethics advised the Executive Director and General Manager of the Dock Board that it was "firmly of the opinion that the Board of Commissioners of the Port of New Orleans is governed by the expressions of the Commission contained in Opinion No. 37 and that members of the Board should be advised accordingly." By resolutions dated March 27, 1981, the Louisiana Commission on Ethics for Public Employees directed its Executive Secretary to conduct private investigations of the seven individual commissioners of the Dock Board to determine if they, or corporations or partnerships in which they had a substantial interest, were rendering services to persons who had or were seeking contractual or other business or financial relationships with the Dock Board or were engaged in or seeking contracts with individuals or corporate *234 businesses which were regulated by the Dock Board in possible violation of La.R.S. 42:1111 C(2)(d) and La.R.S. 42:1116.[4] This suit followed.

II. EXCEPTION OF PREMATURITY
The Ethics Commission with its exception of prematurity claims that since it has only authorized the Executive Secretary to conduct a private investigation into possible violations of the Code, and has not made any formal findings or instituted disciplinary actions, that the plaintiffs have not exhausted their administrative remedies and these proceedings are premature, citing State Mineral Board v. Louisiana Commission on Governmental Ethics, 367 So.2d 1188 (La.App. 1st Cir. 1978), writs refused (1978). In the Mineral Board case, this court observed at page 1191 of the Southern Reporter, as follows:
"The Commission is exercising its statutory power to hold an investigation. That the investigation may lead to the possibility of a disciplinary hearing if violations of the Code of Ethics are found, is insufficient basis for an injunction against that investigatory hearing. The contentions of no adequate remedy, of irreparable harm and of vain and useless procedure are therefore without basis as applied to an investigatory hearing. It is conceivable that the Commission might decide that the conduct does not constitute a violation and so end the controversy."
The Dock Board members contend that the Code is not applicable to them and that the private investigations of them are not authorized by law. Article X, Section 21 of the Louisiana Constitution of 1974 mandates that "The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions." (Emphasis added). Article VI, Section 44 of the Louisiana Constitution of 1974 defines a political subdivision as any "unit of local government, including a school board and a special district, authorized by law to perform governmental functions." In paragraph one of its petition in the instant case, the Dock Board alleges (and thus acknowledges) that it "is the instrument of local government of the State of Louisiana that is charged with the regulation and the maintenance and development of the commerce and traffic of the port and harbor of New Orleans, within the parishes of Orleans, Jefferson and St. Bernard." In the case of Board of Commissioners of Port of New Orleans v. Splendour Shipping & Enterprises Company, Inc., 273 So.2d 19 (La. 1973) the Dock Board alleged that it was an agency of the State of Louisiana and claimed sovereign immunity from suit in tort. At page 20 of the Southern Reporter, the Supreme Court of Louisiana defined the status of the Dock Board as follows:

*235 "The Board is a State agency carrying on a public businessthe operation of the Port of New Orleans. It is given the complete power to operate and regulate the port, wharves, landings, buildings, to expropriate, to legislate, to maintain a police force. R.S. 34:21-44. Its powers are derived from the legislature and the Constitution. It is not `the State of Louisiana,' but is part of the State, and it is an agency of the State."
The Code of Governmental Ethics, La.R.S. 42:1101, et seq., is specifically designed to establish a standard of ethical conduct for "officials and employees of this state and its political subdivisions, ..." A political subdivision is defined therein as "any unit of local government, including a special district, authorized by law to perform governmental functions." R.S. 42:1102(17). A governmental entity for purposes of the Code is "the state or any political subdivision which employs the public employee or employed the former public employee or to which the elected official is elected, as the case may be." R.S. 42:1102(12). A public employee is defined as "anyone, whether compensated or not, who is: (a) An administrative officer or official of a governmental entity who is not filling an elective office." or "(b) Appointed by any elected official when acting in an official capacity, and the appointment is to a post or position wherein the appointee is to serve the governmental entity or an agency thereof, either as a member of an agency, or as an employee thereof." or "(c) Engaged in the performance of a governmental function." R.S. 42:1102(18). An agency for purposes of the Code is defined as "a department, office, division, agency, commission, board, committee, or other organizational unit of a governmental entity." R.S. 42:1102(2). It is clear from these definitions contained in the constitutional and statutory law of Louisiana that the ethical standards for public servants contained in the Code are applicable to the Dock Board commissioners.
The Dock Board and its members argue that because it is a deep water port commission and because the definition of a deep water port commission is separately provided for in Article VI, Section 44(7) of the Louisiana Constitution of 1974 that it is not a political subdivision of the State of Louisiana as defined in Article VI, Section 44(2) and the Code. This argument is without merit. Deep water port commissions are defined in Article VI, Section 44(7) as those "within whose territorial jurisdiction exist facilities capable of accommodating vessels of at least twenty-five feet of draft and of engaging in foreign commerce." This definition has nothing to do with the Dock Board's status as a political subdivision of the State of Louisiana for purposes of the local government article. The purpose of this definition is to show which port commissions are entitled to the benefits of the special provisions on deep water ports contained in Article VI, Section 43 of the Louisiana Constitution of 1974, i.e., the requirement of a "super majority" two-thirds vote of each house of the legislature in order to modify, amend or abolish the structure and organization, powers and functions and jurisdiction of deep water ports.[5]
The Dock Board and its members argue that it is not a political subdivision of the State and is autonomous because its organization and structure, powers and functions, jurisdiction and membership were ratified and confirmed in a separate part of the local government article in Article VI, Section 43.[6] This argument is without merit. *236 Deep water port commissions and districts were dealt with generally in Article VI, Section 43, Part IV, and not individually. A review of the 1974 Constitution shows that the Constitutional Convention removed all specific provisions dealing with political subdivisions, including deep water ports, from the Constitution and placed them in the statutory law. The particular provisions of the Louisiana Constitution of 1921 pertaining to the Dock Board were made statutory by Article XIV, Section 19 of the Louisiana Constitution of 1974.[7] They were thus de-constitutionalized rather than made autonomous. Their structure and organization, powers and functions, jurisdiction and membership may be modified by legislative action, albeit by a "super majority" vote. They do not have the organization and structure protection from legislative acts that home rule cities and parishes have pursuant to Article VI, Section 6. Placement in a separate part of the local government article did not make deep water ports autonomous anymore than it made levee districts autonomous by being placed in Part III of the article. Deep water ports were placed in a separate part of the article because the Constitutional Convention was aware of the importance of these ports to the economy of the State of Louisiana and determined as a matter of policy their existence should be stabilized to a greater degree than the ordinary political subdivision by requiring a "super majority" two-thirds vote of the elected members of each house to affect their organization and structure, powers and functions, territorial jurisdiction and membership.[8] Article VI, Section 43, Part IV, clearly did not have the purpose of giving deep water ports a status of something other than a political subdivision of the State of Louisiana.
The Dock Board and its members argue that since the language "Subject to and not inconsistent with any provision of this Constitution,..." was not attached to the provisions pertaining to deep water ports in Article VI, Section 43, and was specifically rejected by the Constitutional Convention, that deep water ports are not subject to the provisions of Article X, Section 21, mandating a Code of Governmental Ethics for all officials and employees of the State and its political subdivisions.[9] This argument is without merit. The fact that this amendment failed does not preclude the application of Article X, Section 21. The provisions of Article VI, Section 43, dealing with deep water ports, with the clause in question or without it, must be read in pari materia with Article X, Section 21. Central Louisiana Electric Company v. Louisiana Public Service Commission, 251 La. 532, 205 So.2d 389 (1967); Sciambra v. Edwards, 270 So.2d 167 (La.App. 1st Cir. 1972). Since Article VI, Section 43 by its language does not preclude the application of Article X, Section 21, then Article X, Section 21 is applicable. If the Dock Board's argument prevails, the Code would not be applicable to the legislative branch of government or the legislative auditor, the executive branch of government, including the Governor, Lieutenant Governor, Secretary of State, Attorney General, Treasurer, Commissioner of Agriculture, Commissioner of Insurance, *237 Commissioner of Elections and the Public Service Commission, the District Attorneys, Sheriffs, Clerks of Court and Coroners in the judicial branch of government, Assessors, Wildlife and Fisheries Commission, Forestry Commission, State Civil Service Commission and Registrar of Voters,[10] because the clause in question is not attached to any of these provisions.
The Dock Board and its members contend that La.R.S. 34:2 is the exclusive procedure that can be used for the disciplining of individual Dock Board members and thus the Code is inapplicable. That provision of the law provides in pertinent part, as follows:
"* * *No member thus appointed shall be removed except for cause on charges preferred against him in writing by the attorney general and after public hearing and proof of the sufficiency of the charges to justify his removal, before a commission of three disinterested citizens residing within the jurisdictional area of this port, one to be appointed by the governor, one to be appointed by the president of Tulane University of Louisiana, and one to be appointed by the president of Loyola University in New Orleans; however, any member so removed shall have the right to test in the courts the sufficiency of the charges and the evidence in support of the charges."
This provision applies when a Dock Board member is removed without consent from his position. By its own language the provision does not apply in a disciplinary situation where the contemplated action is something less than removal. This law can be construed compatibly with the Code very simply by holding that if just cause for removal exists under the Code, this is the procedure to follow. If the contemplated disciplinary action is something other than removal, the procedures in the Code are applicable. State in Interest of Sapia, 397 So.2d 469 (La.1981).
The Dock Board and its members argue that the Code is not applicable because any legislative act affecting the Dock Board membership must be passed by a two-thirds vote of the elected members of both houses of the Louisiana legislature. A review of the legislative history of Act 443 of 1979, R.S. 42:1101 et seq., shows that it was approved by a vote of 96-2 in the House of Representatives and 37-0 in the Senate.[11] Further, the Code controls the conduct of the individual members of the Dock Board and does not affect the structure or organization of the Dock Board membership as established by law.
The case of Louisiana Milk Commission v. Louisiana Commission on Governmental Ethics, 298 So.2d 285 (La.App. 1st Cir. 1974) is not applicable to the exception of prematurity. In that case the Ethics Commission had completed its private investigation and had issued a formal opinion mandating that the four industry members of the Milk Commission must either resign or divest themselves of any economic interest in the dairy industry, or face a formal public hearing to remove them from office. In the instant case, the Ethics Commission has only commenced a private investigation and has rendered no formal opinion nor mandated any corrective or disciplinary action. The Mineral Board case is controlling and this suit is premature.
For the reasons assigned above, it is our opinion that the Code of Governmental Ethics is applicable to the Dock Board members and that the trial judge was correct in sustaining the exception of prematurity. The judgment in that respect will be affirmed.

III. EXCEPTION OF NO RIGHT OF ACTION
La.R.S. 34:1(A) dealing with the membership of the Dock Board, in pertinent part, *238 provides that "All members shall be experienced in the commerce or industry, or both, of the port area, and shall otherwise possess the qualifications prescribed by law." The Dock Board asserts that because of the scope of its activities, applying Opinion No. 37 literally to its individual members would make it impossible to find persons experienced in the commerce or industry of the port area who do not do business with a person or corporation that does business with it or who is not regulated or controlled by it. To support this contention, the Dock Board introduced evidence that the Port of New Orleans handles 50% of the gross product of the metropolitan New Orleans area, that the Port of New Orleans handles 10% of the gross product of the State of Louisiana, and that the Port of New Orleans provides 20% of the jobs in the New Orleans metropolitan area. Evidence was also presented indicating that the Port of New Orleans does business with all of the banks and utilities in the New Orleans metropolitan area. Testimony was given by members of some of the Dock Board nominating organizations that the literal implementation of Opinion No. 37 with reference to the Dock Board would make it impossible to secure persons who possessed the statutorily required qualifications to serve on the Board. The Dock Board attempted to introduce additional evidence, but was prohibited from doing so by various rulings of the trial judge.
It is our opinion that if rulings of the Ethics Commission make it impossible for a political subdivision of the State of Louisiana to secure members who have the statutory qualifications required by law, the political subdivision will be rendered incapable of performing the functions required of it by law. In such a circumstance, the political subdivision may have a right of action to contest these rulings. However, we are unable to make such a determination in this case at the present time because the Ethics Commission merely proposes to conduct a private investigation of the activities of the individual members of the Dock Board. It has not rendered any rulings with reference to these activities or instituted or recommended disciplinary action. In this posture, it is our opinion that the trial judge acted prematurely in sustaining the exception of no right of action and his judgment in this regard is reversed. We do not overrule the exception of no right of action, but merely reserve the right to the Dock Board and the Ethics Commission to relitigate this issue at some future time, should it be necessary.

IV. EVIDENTIARY RULINGS AT TRIAL OF EXCEPTIONS
During the trials of the exceptions of prematurity and no right of action, the trial judge refused to allow counsel for the plaintiffs to introduce evidence by way of sworn affidavit. The Dock Board alleges that since this was a suit for preliminary and permanent injunctions, that affidavits were authorized pursuant to Article 3609 of the Code of Civil Procedure. The trial judge ruled that since he was conducting the trial of the exceptions, and not the trial of the preliminary injunction, that the Dock Board was required to use only competent legal evidence and that since the affidavits were hearsay, they were inadmissible. Articles 930 and 931 of the Code of Civil Procedure concerning dilatory and peremptory exceptions, respectively, provide that evidence may be introduced at the trial of exceptions "when the grounds thereof do not appear from the petition." We interpret the word "evidence" as used in these articles to mean competent legal evidence. Hearsay has been defined in our law as "... written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." State v. Martin, 356 So.2d 1370 (La.1978); State v. Dupree, 377 So.2d 328 (La.1979). A sworn affidavit is hearsay and is not competent evidence unless its use is specifically authorized by statute.[12]Miller *239 v. Miller, 226 La. 273, 76 So.2d 3 (1954); Cobb v. Jeansonne, 50 So.2d 100 (La.App. 2nd Cir. 1951). It is our opinion that the trial judge correctly ruled that on the trial of the exceptions affidavit evidence was not admissible, even though these exceptions were associated with a suit for preliminary and permanent injunction.

V. FRIVOLOUS APPEAL
In view of the fact that this case presents serious issues of law, and in view of the fact that we have reversed the ruling of the trial judge on the exception of no right of action, the appeal in this case was not frivolous. Accordingly, the request of the Ethics Commission in its answer to the appeal for damages for frivolous appeal is denied. Goad v. May, 376 So.2d 340 (La. App. 3rd Cir. 1979); Jackson v. East Baton Rouge School Board, 348 So.2d 739 (La.App. 1st Cir. 1977).

VI. CONCLUSION
For the reasons above assigned, we hold that the Code of Governmental Ethics of the State of Louisiana is applicable to the Board of Commissioners of the Port of New Orleans and the ruling of the trial court on the exception of prematurity is affirmed; the ruling of the trial court sustaining the exception of no right of action is reversed, reserving to the parties the right to relitigate that issue, should it become necessary; the evidentiary ruling of the trial judge refusing to allow sworn affidavits in evidence at the trial of the exceptions of prematurity and no right of action is affirmed; the request for damages for frivolous appeal is denied; and the Board of Commissioners of the Port of New Orleans is cast for all costs of these proceedings and the proceedings in the trial court, totaling $511.26.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

APPENDIX NO. 1

LOUISIANA COMMISSION ON GOVERNMENTAL ETHICS
DATED: December 17, 1979
FILED: December 17, 1979
 OPINION NO. 37
RE: Propriety of members of State Boards and Commissions rendering goods and services on a contractual basis to firms doing business with or conducting operations governed by the board or commission upon which the member serves.
The Commission's investigation into charges that certain members of the Louisiana Mineral Board and certain state mineral lessees may have violated pertinent portions of the Code of Ethics was resolved without the necessity of a public hearing by the resignation from the Mineral Board of the individuals so charged and declarations by the state mineral lessees that no further contracts would be entered into between the mineral lessees and any individual serving on the Mineral Board.
The Commission has not previously interpreted the Code of Ethics within this context; and, in the past, persons of good faith and judgment may have differed over the construction of the Code as it pertains to this subject. It is therefore fitting and appropriate for the Commission to now interpret the Louisiana Code of Governmental Ethics as it relates to certain business relationships between members of the Louisiana Mineral Board and state mineral lessees, in particular, and as it relates to certain business relationships between any member of any state board or commission, and any firm or concern with whom that member may have business relationships.
The present Ethics Code[1] provides as follows in Sections 1114, 1117(D) and 1117(F):
"§ 1114. Gifts.
General rule for all employees.No state employee shall receive, accept, take, seek or solicit, directly or indirectly, any *240 thing of economic value as a gift, gratuity or favor from any person or from any officer, director, agent or employee of such person, if such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with such employee's agency; or
(2) Conducts operations or activities which are regulated by such employee's agency; or
(3) Has interests which may be substantially affected by such employee's performance or non-performance of official duty.
And if such state employee knew or reasonably should have known of the existence of any of the conditions covered above. Acts 1964, No. 110, § 1.
§ 1117. Members of boards and commissions.
D. No member of any board or commission appointed by the governor with or without the consent of the Senate shall participate in any way in any transaction involving the board or commission on which he serves in which he, his spouse or child, or any person of which he is an officer, director, trustee, partner or employee has a substantial personal economic interest, as distinguished from that of a general class or general group of persons of which he may be reasonably expected to know. As amended Acts 1967, No. 128, § 1.
F. Members of boards and commissions and corporations or firms in which said members are in any way financially interested are prohibited from bidding on or entering into or being in any way interested in any state contract or sub-contract or any other public work coming under the supervision of the board or commission of which he is a member or for the furnishing of any material or supplies of any kind in connection therewith. As amended Acts 1967, No. 128, § 1."
Illustrative of the purpose for the prohibitions contained in the above cited sections of the Code of Ethics, is the situation recently under investigation by this Commission and involving certain members of the State Mineral Board.
The Louisiana Mineral Board exercises discretionary authority over the affairs of state mineral lessees in several economically significant particulars. State mineral lessees, in the performance of their businesses, often seek and obtain goods and services from persons and companies providing such services. These service-oriented companies provide substantially similar services. The selection of those services is subject to the discretionary choice of the state mineral lessees on a call-out, job order, or straight contract basis. When a member of the Mineral Board who is engaged in such service-oriented companies does business with a state mineral lessee on such discretionary bases, the result is that a state mineral lessee is choosing to give valuable business to a member of the Mineral Board as opposed to giving it to some other company, which member exercises discretionary authority over the state mineral lessee. It is the opinion of the Commission that this creates the conflict of interest which the Code of Ethics prohibits notwithstanding the absence of evidence of actual moral impropriety on the part of either Mineral Board member or state mineral lessee.
Specifically, the Commission finds that the exercise of such discretionary business choices by a state mineral lessee is a prohibited "gift", "gratuity" or "favor" under Section 1114. Further the Commission finds that such business activities are prohibited "transactions" under Section 1117(D) and prohibited "financial interests" under Section 1117(F).
Similarly, members of other state boards and commissions may, in their business relationships with others, be affected by the provisions of the above cited sections of the Ethics Code. Generally, members of boards and commissions are proscribed by the provisions of the Code of Ethics quoted above from entering into contracts for the delivery of goods and services with any firm or other concern that either has or is seeking to obtain contractual or other business or *241 financial relationships with the board or commission upon which the member serves, or conducts operations or activities which are regulated by the board or commission or has interests which might be substantially affected by the member's performance or non-performance of duties; as stated differently, the purchase by a firm of goods and services from a member of a regulatory board or commission would constitute a prohibited "gift", "gratuity" or "favor" as proscribed by Section 1114 of the Code of Ethics and, additionally, would render the firm similarly in violation of Section 1118 of the Code of Ethics.
In addition, the Commission notes the legislative intent expressed by Act 443 of the Regular Session of the 1979 Louisiana Legislature, effective April 1, 1980. Section 1111(B)(2)(d) specifically provides that "no public servant shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service [if such services] are performed for or compensated by any person from whom such public servant would be prohibited by R.S. 42:1115[2] from receiving a gift".
This more specific statement of the present law here interpreted by the Commission reinforces the Commission in its conclusion that business relationships between members of boards and commissions and firms either conducting operations subject to regulation by the board or commission or having or seeking to obtain contracts or other business relationships with the board or commission upon which the member serves are strictly prohibited.
A copy of this Opinion is being mailed to the members of all state boards and commissions; the provisions of this Opinion should be closely examined by each member in light of the member's present business practices, if any, with any firm doing business with or conducting operations governed by the board or commission upon which the member serves. Any activities of a member conflicting with the above cited provisions of the Ethics Commission must be terminated within thirty (30) days of the publishing of this Opinion. Thereafter, violations of the above cited sections of the Code of Ethics will result in immediate and appropriate disciplinary action.
 s/Vanue B. Lacour
 Vanue B. Lacour, Chairman
 s/Victor Bussie
 Victor Bussie, Member
 s/Corinne Maybuce
 Corinne Maybuce, Member
 s/Robert C. Snyder
 Robert C. Snyder, Member
 s/Charles M. Brown
 Charles M. Brown, Member
NOTES
[1] While this appeal was pending, the appeal of one of the individual commissioners, Michael J. Molony, Jr., was dismissed as moot on the grounds that he was no longer a member of the Dock Board and the Ethics Commission certified that it was closing its investigation into his particular case.
[2] Opinion No. 37 is attached hereto as Appendix No. 1.
[3] The present Code of Governmental Ethics was enacted by Act No. 443 of 1979 which did not become effective until April 1, 1980.
[4] La.R.S. 42:1111 C(2)(d) provides:

"C. Payments for nonpublic service.
(2) No public servant shall receive anything of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115 from receiving a gift."
La.R.S. 42:1115 provides:
"A. No public servant shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency.
"B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public employee knows or reasonably should know that such person:
(1) Conducts operations or activities which are regulated by the public employee's agency.
(2) Has interests which may be substantially affected by the performance or nonperformance of the public employee's official duty."
La.R.S. 42:1116 provides:
"No public servant shall use the authority of his office or position, directly or indirectly, in a manner intended to compel or coerce any person or other public servant to provide himself, any other public servant, or other person with anything of economic value. This Section shall not be construed to limit that authority authorized by law, statute, ordinance, or legislative rule in carrying out official duties."
[5] See the remarks of Delegate Perez in explaining Article VI, Section 44(7) in Vol. VII, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, pp. 1632, 1634 and 1635.
[6] Article VI, Section 43 provides:

"All deep-water port commissions and all deep-water port, harbor, and terminal districts as organized and constituted on January 1, 1974, including their powers and functions, structure and organization, and territorial jurisdiction, are ratified and confirmed and shall continue to exist, except that
(1) The legislature by law may grant additional powers and functions to any such commission or district and may create new port commissions or port, harbor, and terminal districts.
(2) Only by law enacted by the favorable vote of two-thirds of the elected members of each house, may the legislature consolidate or abolish any such commission or district or diminish, reduce, or withdraw from any such commission or district any of its powers and functions and affect the structure and organization, distribution, and redistribution of the powers and functions of any such commission or district, including additions to or reductions of its territorial jurisdiction.
(3) The legislature shall enact laws with respect to the membership of the commissions provided in this Section. Once the law with respect to membership is enacted, it may be changed only by law enacted by the favorable vote of two-thirds of the elected members of each house."
[7] Article VI, Sections 16, 16.1, 16.2, 16.3, 16.4, 16.5, 16.6 and 17, Louisiana Constitution of 1921. See R.S. 34:1-4, 21-30 and 45-47 and Act 464 of 1975, Act 289 of 1976 and Act 272 of 1980.
[8] Vol. VII, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts pp. 1609-1611.
[9] See, for example, Article VI, Sections 5 and 7 of the Louisiana Constitution of 1974.
[10] Article III, Sections 1 and 11; Article IV, Sections 5, 6, 7, 8, 9, 10, 11, 12, and 21; Article V, Sections 26, 27, 28 and 29; Article VII, Section 24; Article IX, Sections 7 and 8; Article X, Section 3; and Article XI, Section 5.
[11] 1979 Official House Journal, p. 552, May 10, 1979; 1979 Official Senate Journal, pp. 2165-6, July 4, 1979.
[12] See, for example, Articles 966 (Motion for Summary Judgment), 1702 (Confirmation of Default), and 3609 (Preliminary Injunction) of the Code of Civil Procedure.
[1] LSA-R.S. 42:1101, et sic [sic].
[2] Section 1115 provides as follows:

§ 1115. Gifts
A. No public servant shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency.
B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public employee knows or reasonably should know that such person:
(1) Conducts operations or activities which are regulated by the public employee's agency.
(2) Has interests which may be substantially affected by the performance or nonperformance of the public employee's official duty.