Dear Mr. Austin:
You have requested an opinion of the Attorney General regarding the Lake Charles Harbor Terminal District. You specifically ask whether the public of the District may be used to implement a Wellness Fitness Program (WFP) for its employees, a critical component of which is to pay the monthly dues for employees to participate in a structured fitness program at a local YMCA.
The second issue you present is whether the General Counsel to the District is required to take leave from the District while attending monthly meetings of the Louisiana Board of Regents (Board). Prior to answering your questions, we direct your attention to the statutory provisions creating the District and outlining its power and authority.
The District constitutes a political subdivision of the state pursuant to Article VI, Sections 43 44(2) of the 1974 Louisiana Constitution. See Board of Commissioners on Ethics for PublicEmployees, 416 So.2d 231 (La.App. 1st Cir. 1982), rehearing denied; R.S. 34:201 and Attorney General Opinion Nos. 95-439, 93-389, and 93-341. As a political subdivision, it possess those powers conferred by our state constitution and laws. Funds appropriated to, and generated by, the District through the exercise of its constitutional and statutory powers and authority, constitute public funds, the expenditure of which is governed and controlled by pertinent constitutional and statutory provisions. Attorney General Opinion No. 95-439.
The rights and powers of the district are specifically designated in R.S. 34:203, 204 and 215. They include:
1. All rights, privileges, and amenities granted to corporations in Louisiana to own and administer, to contract for, construct, operate, and maintain docks, landings, wharves, sheds, elevators, locks, slips and all other property, structures, equipment and facilities necessary or useful for the District.
2. To dredge and maintain shipways, channels, canals, slips and basins.
3. To acquire or construct industrial plant buildings with the necessary machinery and equipment therefor.
4. To induce and encourage the location of enterprises which would have economic impact upon the area served by the District.
5. To facilitate the development of tourism in areas served by the District.
6. To contract with and employ attorneys, clerks, engineers, superintendents, stevedores, and other agents and employees.
As can be gleaned from the above, the District has been granted extremely broad and sweeping authority to do all things necessary and conducive to the effective maintenance and development of the District and its commerce. It has the corresponding duties to see that the infrastructure comprising the District's facilities, including docks, landings, elevators, locks, canals, belts and connecting lines of ships and railroads are adequately constructed and maintained. It would be virtually impossible to carry out these essential functions without the employment of a vast spectrum of employees who are both mentally and physically capable of meeting the challenges demanded by their employment.
Recognizing the advantages of maintaining a sound work force, the District, in 1994, contracted with Lake Charles Memorial Hospital (Hospital) to establish an Employee Assistance Program (EAP). The EAP was initiated, in part, due to the District's obligation under Section W of its Employee Handbook to "establish a substance abuse awareness program to assist employees to understand and avoid the perils of drug and alcohol abuse."
The contract called for the Hospital to screen employees of the District and to identify existing and/or potential health problems, and to devise an intervention program to minimize and/or eliminate same. As a result, seventeen employees were diagnosed as high risk in one or more of the medical categories tested. These employees have been, and continue to be, treated for these disorders.
An intregal component of the Hospital's intervention program is the implementation of the WFP. This program was implemented in 1996. Under the terms thereof, the District requires participating employees to attend regularly scheduled and monitored workouts at a local YMCA. The District pays the monthly dues for those employees who comply with the structured workout schedule recommended by the Hospital. Employees who do not conform to the program recommended by the Hospital are not eligible to receive this employee benefit. You question the appropriateness of the payment of these dues with District funds.
As you are aware, the constitutional norm for the lawful expenditures of public funds and property is found in ArticleVII, Section 14 of the 1974 Louisiana Constitution. Paragraph (A) generally prohibits the loan, pledge or donation of public funds and/or property. Exceptions to this prohibition are found in Paragraph (B), all of which appear to be inapplicable to the case at hand.
Paragraph (C) of Section 14 authorizes the State and its political subdivisions (e.g., the District) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations and/or individuals. This office has consistently opined that, for an expenditure of public funds to be legally permissible, it must be pursuant to a valid legal obligation (i.e., authority), for a public purpose, resulting in a public benefit proportionate to its cost. Attorney General Opinion Nos. 98-410, 98-378, 97-471A, 96-115, 93-787, 92-722 and 90-651.
As previously noted, the District is mandated to employ and maintain a sound and effective workforce to carry out its essential duties and functions. We find the implementation of the EAP and the WFP, in accordance with its contract with the Hospital and its Employee Handbook, to be within the District's authority. We further find the District's expenditure of funds for the monthly dues of participating employees to constitute a public purpose. Employee participation in the WFP has been shown to foster increased worker productivity, reduced absenteeism, reduced health care costs for the District and the employee and, in general, to enhance the District's ability to serve the public. We turn now to the final criterion — that the transfer of funds create a public benefit to the District proportionate to its cost (i.e., the amount expended for the dues in question).
Clearly, on cannot put a specific price on the value of the benefits to the District enumerated above. While these benefits are somewhat intangible, they are, nevertheless, substantive and essential to the effective operation of the district and the clientele it serves. We therefore conclude that the modest amount of public funds used to induce employee participation in the WFP is not so disproportionate to the public benefit realized so as to render it unconstitutional. In reaching this conclusion, we emphasize that the expenditure of public funds for any program of this nature must be examined as to the characteristics specific to the individual program. We turn now to your second question.
As previously stated, the District's General Counsel has, during his employment with the District, served as a member of the Louisiana State Board of Regents (Board). At one time, he was the Chairman of the Board. It has consistently been the policy of the District to permit its General Counsel to attend Board meetings without taking any accrued leave. He receives a per diem from the Board for meetings attended. You ask whether the District's policy is legally sound.
Initially, we note that the State's Dual Officeholding and Dual Employment laws permit the holding of these two positions, simultaneously.
As a member of the Board, the District's General Counsel is instrumental in planning, coordinating and exercising budgetary responsibility for all public higher education. It is the position of the District that General Counsel's membership on the Board is highly beneficial to the District in that it creates an important nexus between the District and higher education, including the colleges and/or universities in the Lake Charles area. The District also cites the fact that the General Counsel, while in Baton Rouge, meets with other departmental officials and attends other meetings on the District's behalf.
The ability to attract and sustain trade, commerce and industry, to induce and encourage the location of enterprises which would have a positive impact on the economy and to foster the general development of tourism, requires the District to be multi-faceted. In other words, the District cannot function in a vacuum, oblivious to the impact that other public institutions have on goals common to, and shared by all.
Considering all of the above, we are of the opinion that the District has not abused its discretion in the adoption of a policy that permits its General Counsel to attend meetings of the Louisiana State Board of Regents without taking accrued leave.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ Robert E. Harroun, III Assistant Attorney General