Dear Mr. Allain:
As legal advisor to the Board of Commissioners of the Port of Iberia ("the Commission"), and as authorized by resolution of the Commission, you have requested an opinion of the Attorney General on the following: Does the Commission have the legal authority to acquire immovable property interests in Vermilion Parish by either voluntary purchase or expropriation, which are necessary and proper for the use and development of the business of the Commission.
In order to properly answer this question, the focus should be on the Commission's powers and the source of those powers. "The Commission, unlike natural persons, possesses only those powers granted to it by the constitution and statutes of Louisiana." (Op. A.G. 04-0234).
To determine what power has been given to the Commission, we must first look to the definitions and see how a Commission would be categorized. Article 6 of the Louisiana Constitution discusses local governments. A port commission would be considered a "political subdivision" (Op. A.G. 04-0234, Op. A.G. 99-358) based on the constitutional definition which includes "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions." LSA-Const. Art. 6, § 44(2).
The power for commissions generally is found in LSA-Const. Art. 6, § 7, titled "Powers of Other Local Governmental Subdivisions." This section states "the local governmental subdivision shall have the powers authorized by this constitution or by law." Id. For example, the Louisiana Supreme Court inDenham Springs v. All Taxpayers affirmed another case saying that "[l]ocal governments possess the right to impose taxes only when the power is granted to them by the state constitution or by statute. Radiofone, Inc. v. City of New Orleans, 93-0962 (La. 1/14/94), 630 So.2d 694." 04-1674 (La. 2/4/05) 894 So.2d 325,331.
More specifically, the Commission's enabling statutes set forth the Commission's powers with respect to land acquisition, in La. R.S. 34:246. This statute explicitly states, in pertinent part that "[t]he board is authorized to acquire by purchase, donation, expropriation, or otherwise any lands in the Parish of Iberia." It is clear with this wording that the land be acquired only in the Parish. "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." LSA-R.S. 1:4.
We have found no other laws that grant the Commission any powers to acquire property outside of its parish.
It is the opinion of the Attorney General that the Board of Commissioners of the Port of Iberia lacks the authority to acquire immovable property located outside of its Parish, by either voluntary purchase or expropriation.
If we may be of further assistance, please do not hesitate to contact the undersigned.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By:_____________ Charles F. Perry Assistant Attorney General
CCF, Jr./CFP/tp
 ATTACHMENT
OPINION NO. 04-0234
 La. Const. Art. 6, Sec. 23
Ms. Vanessa Harris-Kennerson La. R.S. 34:1453
Attorney at Law La. R.S. 34:1456
Greater Krotz Springs Port Commission The Greater Krotz Springs Port Commission cannot
P.O. Box 155 obtain purchase property
 which is not to be used for
Krotz Springs, Louisiana 70750 the commerce of the port,
 but is obtained only for
 possible future exchange
 for privately-owned property
 adjacent to the port.

Dear Ms. Harris-Kennerson:
As legal advisor to the Greater Krotz Springs Port Commission ("the Commission"), and as authorized by resolution of that commission, you have requested an opinion of the Attorney General on the following: Can the Commission purchase vacant land in St. Landry Parish that will not be used for the operation of the Port of Krotz Springs, but will be used only for a possible exchange for privately-owned real property adjacent to the Port?
The Commission is a political subdivision (Op. A.G. 99-358) and, as such, has authority under La. Const. Art. 6, Sec. 23 to acquire property for any public purpose by purchase, donation, expropriation, exchange, or otherwise, subject to restrictions provided by general law.
Under La. R.S. 34:1456, the Commission is authorized to acquire by expropriation in accordance with the expropriation law of the state of Louisiana any wharves, landings or any other properties necessary for the benefit and advantage of the commerce of the Commission.
The rights, powers and duties of the Commission are defined in La. R.S. 34:1453, which states, in pertinent part, that:
 C. The commission shall regulate the commerce and traffic within such port area in such manner as may, in its judgment, be for the best interest of the state. It shall have charge of, and administer public wharves, docks, sheds and landings and shall be empowered to construct or acquire and equip wharves and landings and other structures useful for the commerce of the port area and to provide mechanical facilities therefor; to erect sheds or other structures on such wharves and landings; to maintain proper depths of water at all such wharves and landings; to provide light, water, police protection and other services for its facilities as it may deem advisable; to construct or acquire, maintain and operate basins, locks. canals, warehouses and elevators; to charge for the use of all facilities administered by it and for all services rendered by it, such fees, rates, tariffs, or other charges as it may establish; to establish harbor lines within the port area by agreement with the Corps of Engineers; and to construct, own, operate and maintain terminal rail facilities and other common carrier rail facilities for the purpose of rendering rail transportation to and from the facilities to be erected, owned and operated by the commission in both intrastate and interstate commerce. The legislature may confer additional powers upon the commission, not inconsistent with the provisions hereof [Emphasis supplied].
The Commission, unlike natural persons, possesses only those powers granted to it by the constitution and statutes of Louisiana. Although the Commission can obtain real property by purchase, expropriation, or otherwise, such property can be obtained only for a "public purpose" (La. Const. Art. 6, Sec.23); can be expropriated only for the "benefit and advantage of the commerce of the Commission" (La. R.S. 34:1456); and, in accordance with said Art. 6, Sec. 23, can be obtained only for the purposes specified in La. R.S. 34:1453, all of which directly relate to the operation of the port and its necessary facilities, including acquisition and operation of wharves, landings, structures, mechanical facilities, basins, locks, canals, warehouses, elevators, and railways.
We have found no other laws that grant the Commission any other or additional powers to obtain or to use real estate, for any purposes other than those listed above. We cannot find any provision of law that grants to the Commission the authority to acquire any real property that is not to be used for a public purpose, namely the commerce of the Port of Krotz Springs. It should also be noted that the Commission has not, in its request for an opinion, given any reason why the Commission could not lawfully obtain the needed real property adjacent to the port, by purchase or expropriation, or why the proposed exchange would be necessary or even advisable.
It is the opinion of the Attorney General that the Greater Krotz Springs Port Commission cannot obtain real property which is not to be used for the commerce of the Port, but which is to be obtained only for possible future exchange for privately-owned property that is adjacent to the port.
Ms. Vanessa Harris-Kennerson Opinion No. 04-0234
If we may be of further assistance, please do not hesitate to contact the undersigned.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: ____________________________ TERRY F. HESSICK Assistant Attorney General
 ATTACHMENT OPINION NUMBER 99-358 54 Insurance 90-1 Port Commission 90-A.1 Public Funds and Contracts
 Article VI, Sections 43
and 44(2) of the 1974 Louisiana Constitution R.S. 34:1452, 1453
Vanessa Harris-Kennerson Revenues received by the Greater Krotz Legal Counsel for the Greater Springs Port Commission from statutory Krotz Springs Port Commission fees and rents constitute self-generated P.O. Box 155 revenues which are also Krotz Springs, LA 70750 public funds. Such revenues may be used by the Commission for the payment of health insurance premiums for its members, said premiums to be uniform for all active members. In addition, the Port Commission may use these revenues for the cost of meals incidental to its meetings for official guests of the Commission. The cost of the meals must be reasonable and the cost of alcoholic beverages may not be paid from public funds. Finally, the Commission should adopt a formal policy with regard to its meetings as per R.S. 34:1452.
Dear Ms. Harris-Kennerson:
You have requested an opinion of the Attorney General in your capacity as legal counsel for the Greater Krotz Springs Port Commission (Commission). You state that it has been the practice of the Commission to prepare and serve a meal at the conclusion of its regularly scheduled monthly meetings. There are no alcoholic beverages served with the meal. You further state that, in the event prospective clients, port tenants, elected municipal officials and/or legislators attend a meeting, they are invited to dine with commission members. The cost of the meals are paid from the self-generated revenues of the Commission. You ask whether this practice is legally permissible.
In answer to your question, it is the opinion of this office that the Commission can use its funds to host a luncheon for the dignitaries enumerated above under the following conditions: (1) the meal is served in connection with the official proceedings of the Commission (2) the cost of the meal is reasonable (3) the identity of the guests and their business relationships to the Commission are fully documented and (4) public funds are not used for the purchase of alcohol. We further recommend that you contact representatives of the Ethics Commission for their concurrence.
As previously noted, the Commission is funded through revenues generated from fees, charges and rents that it collects. You ask our opinion as to the identity and/or classification of these funds. In other words, do these funds constitute state funds, public funds, etc?
The Commission constitutes a political subdivision of the state pursuant to Article VI, Sections 43 and 44(2) of the 1974 Louisiana Constitution. Board of Commissioners of the Port ofNew Orleans, et al. v. Louisiana Commission on Ethics for PublicEmployees, 416 So.2d 231 (La.App. 1st Cir. 1982) rehearing denied, and Attorney General Opinion Nos. 95-439, 93-389, 93-341, 87-31, 83-288 and 77-36. As a political subdivision, it possesses those powers conferred by our state constitution and laws. These laws, specifically R.S. 34:1453, authorize the Commission to establish and collect the fees and rents comprising its self-generated revenues. While these revenues do not technically constitute state appropriated funds (see Attorney General Opinion No. 93-182), there is no question that they constitute public funds, the expenditure of which is governed and controlled by pertinent constitutional and statutory provisions. Attorney General Opinion No. 95-439.
Your third question pertains to R.S. 34:1453(B), as it relates to health insurance for Commission members. You ask whether the Commission should adopt a formal policy for the administration of its insurance program. R.S. 34:1453(B) provides, in pertinent part, the following:
 The commission is authorized to provide health insurance for its members, however no state funds shall be used to pay for such insurance.
In Attorney General Opinion No. 93-182, this office concluded that the Commission may use self-generated funds to provide health insurance for its members. This opinion is hereby affirmed. We further opine that the Commission should adopt a formal policy pursuant to which its insurance program should is administered. It has been, and continues to be, the opinion of this office that the premium payments should be uniform for all active members of a board and/or commission. Attorney General Opinion No. 99-149. The policy adopted by the Commission should reflect this tenet.
Your final question pertains to the meetings of the Commission. You state that the Commission usually convenes three meetings per month consisting of one monthly meeting of the full board and two standing committee meetings. You ask whether this practice is legally permissible.
In answer to your question, we refer you to R.S. 34:1452
which provides, in pertinent part, the following:
§ 1452. Officers of the board; meetings
 . . . The commission shall meet in regular session once each month, and shall also meet in special session at the call of the president of the commission, or on the written request of three members of the commission . . . The commission shall prescribe rules to govern its meetings and shall fix the place at which meetings shall be held.
It is the opinion of this office that meetings of the Commission are governed by Section 1452. While the law limits regular session meetings to one per month, special meetings can be called by the president or convened upon the written request of three members of the Commission. We find term "special meetings" includes the standing committee meetings referenced above. Further, since the statute does not limit the number of special meetings, the calling of same would appear to lie within the sound discretion of the president and/or Commission members. The three meetings currently being held do not appear to constitute an abuse of this discretion. If the Commission has not already done so, we recommend that it prescribe formal rules to govern its meetings and fix the place at which meetings will be held, all in accordance with Section 1452.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ____________________________ ROBERT E. HARROUN, III Assistant Attorney General