514 So.2d 276 (1987)
Mary Dorothy BONENO, Luke Boneno, Richard N. Boneno, Cyprien D. Duhe, Elizabeth Hymel Duhe, Allen J. St. Pierre and Audrey St. Pierre
v.
George A. LASSEIGNE, Jr., Theresa Aycock Madere, Joseph Junius Ory, Doris Lasseigne Carville, Fernand J. Aycock, Jr., Bernice Ory Fulton, and St. John Fleeting, Inc.
No. 87-CA-215.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1987.
Rehearing Denied November 17, 1987.
*277 Gerald L. Walter, Jr. and Anne Jordan Crochet, Schwab & Walter, Baton Rouge, for plaintiffs/appellants, Mary Dorothy Boneno, et als.
George Ann Hayne Graugnard, La Place, for defendants/appellees, George A. Lasseigne, Jr., et als.
Jules H. Carville, III, La Place, for defendants-appellees.
Before BOWES, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
Plaintiffs-appellants appeal a judgment of the district court maintaining an exception of prescription filed by defendants. Plaintiffs brought a possessory action against the defendants on certain batture property in St. John Parish. Defendants excepted, averring that an "actual disturbance", requisite for maintaining such possessory action, took place more than a year prior to the filing of plaintiff's petition. The trial court found that plaintiffs knew or should have known of the disturbance and that plaintiffs' suit had prescribed. We are of the opinion that there was not sufficient competent evidence presented before the trial judge for him to reach this conclusion. Accordingly, for the reasons hereinafter assigned, we set aside the judgment and remand the case for further proceedings in which more complete and competent evidence may be presented.
On July 9, 1984, plaintiffs filed a "petition to be restored to possession" of certain batture property which they averred was in their possession. In the petition, it was averred that the defendant St. John Fleeting constructed a large maintenance wharf on the subject property on July 15, 1983. Further, it was alleged that on September 8, 1983, the remaining defendants George A. Lasseigne, Jr., Theresa Aycock Madere, Joseph Junius Ory, Doris Lasseigne Carville, Fernand J. Aycock, Jr., and Bernice Ory Fulton, disturbed plaintiffs' possession by causing a lease, purporting to evidence defendants' ownership of the property to be recorded in the conveyance records of St. John the Baptist Parish. The petition was amended on November 6, 1984, to characterize the actions of St. John Fleeting as a disturbance in fact, and the actions of the remaining defendants as a disturbance in law. The amended petition expanded more fully on plaintiff's possession prior to the alleged disturbances, including claims that leases were executed by plaintiffs in favor of Midstream Barge Service in 1981, and averments that contracts with various parties for sand hauling were made by plaintiffs beginning in 1941.
Defendants filed a reconventional demand, alleging their ownership and possession of the subject property and the original plaintiffs' lawsuit disturbed their possession.
After various discovery and other pre-trial procedures, the original defendants filed the exception of prescription presently before us, alleging that the barge fleeting facilities and fixtures were constructed and placed on the subject batture by St. John Fleeting before July 9, 1983. Therefore, according to the defendants, the plaintiffs' action had prescribed under La.C.C.P. art. 3658.[1]
*278 The exception was heard prior to trial on the merits. At the trial of the exception, defendants submitted an affidavit of Mr. Jack Parker. Mr. Parker, president of Jack Parker Enterprises, attested that Parker Enterprises leased a crane to Zito-Metcalf Marine[2], for the purpose of driving "dead men" pilings during June, 1983; and an attached invoice dated June 29, 1983, was prepared by him upon return of the crane. The only other evidence submitted by defendants on the exception was a deposition of Charles Dayberry, an employee of Zito-Metcalf, who was involved in the construction of the barge fleeting facilities and fixtures.
Appellants vigorously objected during the trial to the introduction or use of both the affidavit and the deposition for evidentiary purposes.
Plaintiffs Allen St. Pierre, Mary Boneno and Elizabeth Hymel Duhe all testified at the hearing on the exception. Additionally, plaintiffs produced Gerald Dyson, whom the Court accepted as an expert in civil engineering, to testify as to the water levels during the month of June.[3]
In maintaining the defendants' exception of prescription, it is apparent that the trial court relied mainly on the statements made by Mr. Dayberry in his deposition. In his reasons for judgment, the judge discussed a number of statements made by Mr. Dayberry regarding the fabrication and installation of the "dead men" pilings, including the approximate periods of time given by Dayberry for the pile driving operation.
The Court continued:
The Court finds that the deposition testimony of Charles Dayberry is the only independent testimony offered to the Court regarding the placement of dead men at Garyville. While the commencement of pile driving operations cannot be definitely ascertained, this Court believes that Mr. Dayberry's correlation of the completion of his activities with the return of the crane indicates that pile driving took place before June 29, 1983.
The Court concluded that Mr. St. Pierre, who regularly inspected the batture on his own behalf and on behalf of the other plaintiffs, knew or should have known of the disturbance which the court found had occurred on or before the end of June, 1983. Then the Court maintained the exception of prescription and plaintiffs' suit was dismissed.
On appeal, plaintiffs' urge that it was error to admit into evidence, over their objections, the affidavit of Parker and Dayberry's deposition. Plaintiffs also contend that the evidence does not support a finding that plaintiffs' action had prescribed.
At the outset, we note that while the exception was filed by all the defendants, the grounds alleged therein can only be considered vis-a-vis the defendant St. John Fleeting. The time of the disturbance in fact, that is the construction of the barge facility, is relevant only to that defendant. Plaintiffs alleged that the remaining defendants disturbed their possession by executing and recording a lease in favor of St. John Fleeting. Such lease is an allegation of a disturbance "in law" under La.C.C.P. Art. 3659:
A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the *279 possession thereof except in an action or proceeding, adversely to the possessor of such property or right.
When the disturbance is one in law, it amounts to a continuing disturbance. Thus it is regarded as occurring not only on the date of recordation of the instrument but each day thereafter as long as it exists. Roy O. Martin Lumber Co., Inc. v. Lemoine, 381 So.2d 915 (La.App. 3 Cir.1980). In the absence of any evidence introduced by the defendants at the trial on the exception that the lease in question no longer exists, the alleged disturbance in law apparently is a continuing one, in which case plaintiffs' action as to that disturbance would not have prescribed. Additionally, the plaintiffs' amended petition states that the lease was recorded on September 8, 1983, which is less than one year prior to the filing of the original petition. Therefore, we do not find sufficient evidence presented at the hearing on which to maintain the exception of prescription in favor of these defendants.
Considering the exception of prescription only insofar as it relates to St. John Fleeting, we are of the opinion that the plaintiffs are correct in urging that admission of the Parker affidavit and Dayberry deposition was erroneous. As stated in Board of Com'rs. v. Louisiana Com'n. on Ethics, 416 So.2d 231 (La.App. 1 Cir. 1982):
Articles 930 and 931 of the Code of Civil Procedure concerning dilatory and peremptory exceptions, respectively, provide that evidence may be introduced at the trial of exceptions "when the grounds thereof do not appear from the petition." We interpret the word "evidence" as used in these articles to mean competent legal evidence. Hearsay has been defined in our law as "... written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." State v. Martin, 356 So.2d 1370 (La.1978); State v. Dupree, 377 So.2d 328 (La.1979). A sworn affidavit is hearsay and is not competent evidence unless its use is specifically authorized by statute. [emphasis supplied]
C.C.P. Art. 966 specifically permits the use of affidavits in a Motion for Summary Judgment. This is an exception to the general rule. We are aware of no such statutory exception permitting the use of affidavits in a trial of a peremptory exception of prescription. Accordingly, it was error to permit its introduction into evidence on the trial of this exception.
As to the Dayberry deposition, the trial court found that the deposition was taken "for all purposes and by consent of counsel." Therefore, the court felt that it could consider the deposition as evidence at the trial. Defendant did not attempt to qualify the deposition under one of the conditions of C.C.P. Art. 1450.[4] The stipulation made on the taking of the deposition provided:
It is stipulated and agreed by and between all parties that this deposition is hereby being taken pursuant to the Louisiana Code of Civil Procedure.
All formalities including those of signing, sealing, certification and filing are waived.
All objections except those as to the form of the question and the responsiveness of the answer are reserved until the *280 deposition is used or sought to be used in evidence.
We find nothing in the stipulation evidencing or showing any intention that the deposition was taken or could be used "for all purposes."
Defendants cite Chaudoir v. Chaudoir, 454 So.2d 895 (La.App. 3 Cir.1984) for its holding that in matters regarding admission into evidence of depositions, the trial court is vested with discretion. However, we are unable to discover any caselaw, or other legal authority, which broadens this discretion into authority to disregard consideration of the qualifying circumstances enumerated in C.C.P. Art. 1450(3), particularly in view of an objection to such use by the opposing side. To the contrary, as noted below, our caselaw is replete with jurisprudence requiring qualification of a deposition made under C.C.P. Art. 1450 (formerly C.C.P. Art. 1428) before it can be admitted into evidence.
In Kleas v. Mayfield, 404 So.2d 500 (La. App. 3 Cir. 1981), the Court stated:
Specifically, Mayfield contends that the depositions should have been excluded because plaintiffs offered no facts under La.C.C.P. Art. 14502 which warrant the use of depositions of the Inexco employees, who were nonparty witnesses. The record reflects that the parties did not stipulate to the general use of the depositions. Further, when plaintiffs' counsel offered the depositions as evidence, he made no effort to establish the grounds for admissibility thereof. We find no other evidence in the record which would render the depositions admissible. Therefore, we agree with Mayfield that the depositions should have been excluded from evidence. Maricle v. Cloud, 341 So.2d 29 (La.App. 3rd Cir. 1976); Jacob v. Laborde, 280 So.2d 621 (La.App. 4th Cir.1973).
In Broussard v. Coleman, 479 So.2d 1016 (La.App. 3 Cir.1985), the appellant contended that the deposition in question should have been admitted because it was taken for all purposes and because the deponent was too ill to testify. The court found that the deposition was taken for the purpose of discovery, that the parties did not stipulate that the deposition could be used at trial in lieu of live testimony, and there was no competent evidence to establish the illness of the deponent. Finding none of the other provisions of C.C.P. Art. 1450 applicable, the court found the plaintiffs had failed to establish a basis for the introduction of the deposition, and that the trial court correctly refused to admit it. See also Bland v. Interstate Fire & Casualty Co., 311 So.2d 480 (La.App. 4 Cir. 1975); Succession of Martin, 424 So.2d 1219 (La.App. 1 Cir.1982).
In Montgomery v. Breaux, 297 So.2d 185 (La.1974), the Supreme Court was concerned with admission of former testimony in another possessory action. In comparing admissibility of such testimony to admissibility of depositions, however, the court stated:
Louisiana recognizes this rule in its C.C.P. Art. 1428 which deals with the use of depositions at trial. When the deposition is sought to be used in place of the witness' actual trial testimony, a showing of unavailability of the witness is required.*
In the present case, the record shows that the plaintiff took Dayberry's deposition for discovery purposes only, and not in lieu of live testimony. There was no stipulation, nor showing of an agreement of counsel, that the deposition was taken for any and all purposes. Defendants did not attempt to qualify the deposition under C.C.P. Art. 1450, nor did the trial judge make any findings whatsoever that any of the limitations of the article were applicable. We hold, therefore, that there was no basis for admission of the deposition and to do so was error.
Defendants presented no other evidence on their behalf at the trial of this exception. There was nothing in the plaintiffs' testimony to contradict the assertions in the petition that they first became aware of the barge company's construction on July 15th, nor that any activity took place prior to July 9, 1983, that should have put them on notice regarding this construction.
*281 Our jurisprudence indicates that for a disturbance to be sufficient to interrupt another's right to possess, it must be an actual deed or act which brings home to the "actual possessor" the realization that his dominion is being seriously challenged. Pittman v. Bourg, 179 La. 66, 153 So. 22 (1934); Harvey v. Harvey, 431 So.2d 786 (La.App. 1 Cir.1983).
Absent the inadmissible evidence noted above, there was no showing at the trial that there was any act or deed which should have alerted plaintiffs or "brought home to them the realization" that their dominion was being challenged by defendants prior to July 15, 1983.
For the foregoing reasons, the judgment of the trial court maintaining the exception of prescription is set aside and the case is remanded to the district court for a complete evidentiary hearing on the exception of prescription, consistent with this opinion and for a trial on the merits when and if that is appropriate.
Appellees are assessed all costs of this appeal.
JUDGMENT SET ASIDE AND REMANDED
NOTES
[1] La.C.C.P. Art. 3658

To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
[2] The connection between Zito-Metcalf Marine and St. John Fleeting is unclear. Charles Metcalf (whose deposition is in the record but is not a part of the evidence before us at present) is a stockholder in both companies. Metcalf-Marine is engaged in the business of cleaning and repairing barges. St. John fleets and shifts barges to and from the fleet. It would appear that Zito-Metcalf built the facilities for St. John Fleeting.
[3] Mr. Dyson's testimony was chiefly to the effect that there was water on the batture throughout most of June. On June 15, 1983, the river was at 23.1 feet. The substance of Mr. Dyson's testimony is not relevant to the questions presented today and will not be addressed any further.
[4] C.C.P. Art. 1450(3) lists the uses of depositions of witnesses not a party to the suit:

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.