534 So.2d 968 (1988)
Mary Dorothy BONENO, et al.
v.
George A. LASSEIGNE, Jr., et al.
No. 88-CA-391.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1988.
Gerald L. Walter, Jr., Anne Jordan Crochet, Schwab & Walter, Baton Rouge, for appellants, Mary Dorothy Boneno, et al.
George Ann Hayne Graugnard, LaPlace, for defendants-appellees, George A. Lasseigne, Jr., et al.
Before BOWES, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
The appeal presently before us is the second appeal on an exception of prescription maintained by the trial court in favor of defendants. On the first appeal, this Court set aside the first judgment in favor of defendants and remanded the case for another hearing on the exception, because this Court found the judgment had been based on inadmissible evidence. See Boneno v. Lasseigne, 514 So.2d 276 (La.App. 5 Cir.1981).
*969 The procedural facts of the case have been stated in our previous opinion and it is unnecessary to reiterate them in detail at this point. It is sufficient to say that the plaintiffs-appellants, Mary Dorothy Boneno, Luke Boneno, Richard N. Boneno, Cyprien D. Duhe, Elizabeth Hymel Duhe, Allen J. St. Pierre and Audrey Millet St. Pierre brought a possessory action against the defendants, George A. Lasseigne, Jr., Theresa Aycock Madere, Joseph Junius Ory, Doris Lasseigne Carville, Fernand J. Aycock, Jr., Bernice Ory Fulton and St. John Fleeting, Inc., seeking to be restored to possession of batture property. Because the plaintiffs-appellants were chiefly represented by Mr. St. Pierre as their spokesman, they will be referred to collectively as the St. Pierre plaintiffs or St. Pierre group; the defendants-appellees are hereinafter referred to as the Lasseigne defendants or group.
The facts which gave rise to this action and which were not delineated in the first opinion are these:
The St. Pierre plaintiffs are three Garyville families who live on adjacent tracts of land which front on Jefferson Highway in Garyville. South of Jefferson Highway lies the levee and the subject batture, between the prolongation of the western boundary of the Boneno tract and the eastern boundary of the Duhe tract. The St. Pierre plaintiffs allege that they and/or their ancestors were in possession of the batture since 1941 at which time they began to exercise possession by, among other things, executing various contracts for sand hauling and mineral leases, and by fishing, swimming, and other recreational activities. In 1981, they had executed a lease in favor of Midstream Barge Service which lease did not expire until 1986.
In 1983, the Lasseigne defendants were parties to an agreement which ultimately resulted in a lease of the subject batture property to St. John Fleeting, Inc. (hereinafter St. John). The St. Pierre plaintiffs contend they first discovered employees of St. John working on the property on July 15, 1983. On July 9, 1984, this possessory action was filed by them.
The exception of prescription filed by defendants is founded upon their contention that the barge fleeting facilities were commenced, constructed and placed on the batture prior to July 9, 1983, and therefore the plaintiffs' action had prescribed on the date of filing because the suit had not been instituted within one year of the actual commencement of the disturbance.
Our previous opinion dealt with the prescriptive period enunciated in the Louisiana Code of Civil Procedure Article 3658(4)[1] as it applied to the various defendants, and not C.C.P. Art. 3658(2) which mandates one year of peaceful possession and involves a question of a plaintiff's (here, the St. Pierre group) procedural right to proceed. Cf. Todd v. State, Dept. of Natural Resources, 474 So.2d 430 (La.1985). The exception presently before this court is once again one of prescription under Article C.C.P. Art. 3658(4). Because we find in the present appeal that the trial court was manifestly erroneous in its determination that the activities commenced and undertaken by the defendants in June of 1983 were sufficient to constitute a "disturbance in fact" within the meaning of the applicable law, it is unnecessary for us to expand on the issue of a "disturbance in law" which we discussed in Boneno, supra. The disturbance in fact took place as of July 15, 1983, and, therefore, the question of a disturbance in law is immaterial.
The record reveals that all the St. Pierre plaintiff families had lived on their respective properties since at least sometime in the 1940's. Allen St. Pierre purchased the *970 property upon which he resided in 1958 from his father, who, in turn, had purchased it in 1943. Ms. Boneno had lived in her house for 54 years at the time of the first hearing in 1986. Mr. St. Pierre assumed the position of unofficial spokesman for the three families after Mr. Boneno (father of the witness at trial) passed away. Our appreciation of his testimony is that first Mr. Boneno, then later Mr. St. Pierre, patrolled the levee on behalf of all the families and kept everyone periodically informed of the activities, and coordinated their efforts to guard their property against it being taken from them in just such a situation as we have here. We quote from the testimony of Mr. St. Pierre:
"From the very outset that we were all, also separate, and in more or less being the liaison and the spokesman for the group, I founded the responsibility that not only safeguarding the properties on the batture that belong to us, that it was important that from time to time I would confer with them on what was going on back of the levee and to protect our properties."
In fact, for purposes of the exception of prescription only, the parties stipulated to the St. Pierre group's possession of the batture involved in these proceedings. We interpret this as meaning that the parties agreed to forego having to prove acts of possession by the St. Pierre plaintiffs in order to facilitate the trial of the exception of prescription before the court. In other words, for this limited purpose, the defendants agreed that the plaintiffs possessed the batture at the time of the disturbance. Therefore, the issue before us now is whether, legally, there was actually a disturbance, and, if so, the date of the commencement of the disturbance, as it relates to prescription, and by whom was it committed.
On July 15, 1983, Mr. St. Pierre was engaged in a periodic patrol of the batture area, which he usually did every week or two, when he heard heavy machinery and proceeded down the road to investigate. He encountered some employees of St. John using a bulldozer and, upon questioning, he was told that St. John had a lease with the Lasseignes. After consulting with the Bonenos and Duhes, the St. Pierre group sought legal advice and the present possessory action was brought on July 9, 1984.
The crux of the exception filed by defendants is that in June, 1983, employees of St. John commenced operations on the batture and that these operations constituted a disturbance within the meaning of C.C.P. Art. 3658(4) sufficient to begin the running of that one year prescriptive period. C.C.P. Art. 3658(4) states in pertinent part:
To maintain the possessory action the possessor must allege and prove that:
. . . . .
(4) The possessory action was instituted within a year of the disturbance.
Mr. Charles Dayberry testified at the trial on behalf of the Lasseigne defendants. Mr. Dayberry conducted the construction of the barge fleeting facility on behalf of St. John. He testified that he and his crew drove 25 pilings into the riverbank along the Garyville area, beginning upriver from a Marathon Oil facility. Each piling was a forty foot long "H" steel beam. The pilings were driven approximately 200-220 feet apart on the riverbank. The job took approximately one week to complete. However, Mr. Dayberry stated that the actual driving of the pilings took only three or four days.
The operation (per piling in each location) consisted of driving the "H" beam into the ground to which was attached an anchor chain; in turn, these chains had cables attached to them and buoys were chained to the cables. This was to enable the barge to find the buoy, and, in turn, find the anchor chain in order to moor. This fabrication took approximately only one to one and a half hours at each piling location.
At trial, receipts were produced which evidenced the return, on June 29, 1983, of a crane which Mr. Dayberry testified had been used in the pile driving operation. Mr. Jack Parker, of Jack Parker Enterprises, Inc., testified that the equipment was *971 rented from his company for the purpose of pile driving and that the machinery was returned to the company on June 29, 1983. The trial court in its reasons for judgment found that this evidence proved that the pile driving work was completed by that date, i.e., June 29, 1983. We quote from the reasons for judgment:
"In the present case, the court has found that as a matter of fact, the pile driving activities were public and obvious to all, and the plaintiffs should have been on notice that their claimed right to possess was being seriously challenged by St. John Fleeting's work. Thus, even if plaintiffs were not actually aware of the work until July 15, 1983, this would be of no consequence because of the public nature of these acts of possession."
The trial judge continued:
"In Vermillion [Vermilion] Parish School Bd. v. Muller, 92 So.2d 77 (La. App.1957), the court ruled that it is the commencement of a work of possession which triggers the one year period within which to bring suit, not the completion of the work. Again, because the pilings were set at least by June 29, 1983, that is the date that the one year period commenced."
On appeal, the St. Pierre plaintiffs urge that the trial court erred in maintaining the exception of prescription and in failing to accept into evidence the testimony of Gerald Dyson, a civil engineer, plaintiffs' expert, on high water river stages during the critical period of June, 1983. Because we agree with the first specification of error, it is unnecessary to address the second.
Mr. St. Pierre testified at trial that the batture in question, claimed by himself, the Bonenos, and the Duhes, was only 300 feet along the river.
Therefore, from the above testimony of Mr. Dayberry, we conclude St. John was conducting this activity on the subject property for no longer than a total of three hours, if the pilings were driven 200-220 feet apart and each piling took one to one and a half hours to complete. The barge fleeting operation neither began nor ended on the subject property, and, again, by our calculations from the testimony, spanned a distance of 5,000-5,500 feet along the river. St. John was already leasing the property adjacent to the Bonenos and owned by the Millet family, for a barge cleaning and barge movement transfer system. Therefore, there were already, before June of 1983, barges in the river commerce and adjacent to the St. Pierre group's batture.
The height of the elevation of the batture is not clear from the record. However, during high water season, the batture is inundated with river water, making it inaccessible except by boat. When the water is low, the batture can be used for sand hauling, mineral exploration, and other profitable operations. During the pertinent time involved here, the batture in question was covered with vegetation, such as willow trees. Once the pilings were set into the riverbank, the only visible signs that anything had been done were the buoys floating in the river.
After thorough consideration of the facts of the present case and the jurisprudence and law in the area, we conclude that this very brief pile-driving operation was not of such a nature as to bring home to the St. Pierre group the realization that their dominion was being seriously challenged, nor is it reasonable to believe that they should have even known of it. At first blush, it would seem that the noisy procedure of driving these pilings into the riverbank would put anyone on notice that the actor was performing an action which he intended to possess that batture. We are, however, guided to a different conclusion by several factors.
St. John was involved with placement of the pilings on the disputed batture itself for only a matter of hours, not days. Moreover, it had been engaged in similar operations on battures adjacent to that claimed by the St. Pierre group. Just as important is the fact noted above that once the St. John crew completed operations on the contested batture, there was no physical evidence that anything had taken place other than one or two buoys afloat in the river. Barge fleeting operations up and *972 down the river (i.e., on the Millet property) were commonplace, and not something to attract one's attention or curiosity, and there is no other evidence in the record on appeal that there was any action constituting a disturbance at all, much less one of such magnitude that would have alerted the St. Pierre group that their possession had been challenged.
The First Circuit has said:
To determine the type of corporeal possession sufficient to achieve the right to possess or to commence the running of acquisitive prescription, Louisiana courts look to the nature of the property and the facts and circumstances of each case. Pitre v. Tenneco Oil Co., 385 So.2d 840 (La.App. 1 Cir.1980)
Pitre also enunciates the rule regarding the type of disturbances legally sufficient to interrupt possession:
A question often arises as to what type of activity by an adverse party will sufficiently interrupt a person's right to possess so as to usurp his possession and strip him of his right upon passage of more than a year's time. Not every disturbance is strong or long enough to interrupt another's right to possess.
. . . . .
Louisiana courts have indicated that for a disturbance to be sufficient to interrupt another's right to possess, the disturbance must bring home to the actual possessor the realization that his dominion is being seriously challenged. Pittman v. Bourg, 179 La. 66, 153 So. 22 (1934); Souther v. Domingue, 238 So.2d 264 (La.App. 3rd Cir.1970), writ refused 256 La. 891, 239 So.2d 544 (1970); Hebert v. Chargois, 106 So.2d 15 (La.App. 1st Cir.1958). In addition, the person with the right to possess must acquiesce in the interruption for more than a year without conducting any act of possession or without interfering with the usurper's possession. La.C.C. art. 3449(2). [Emphasis added]
Pitre, supra.
We agree with our learned brothers of the First Circuit in the rules they have enunciated above and adopt them here.
The Supreme Court in Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975), equated the possession required to bring a possessory action with the possession required to commence the running of acquisitive prescription. With regard to such acquisitive prescription, La.C.C. art. 3476 states in pertinent part: "The possession must be continuous, uninterrupted, peaceable, public and unequivocal."
We find that the interruption of possession sufficient to apprise a possessor of the challenge to his claim must encompass more than a brief, and thereafter invisible, act to bring the action into the realm of a "public" possession.
The Lasseigne group avers that other activities did take place such as the mooring of barges, and the resurfacing of a levee road. However, the testimony of Mr. Dayberry was, at best, inconclusive as to the time that other activities took place; moreover, the testimony does not establish with any certainty that the barges were moored on the batture in question and the resurfaced levee road appears to have been actually located on the adjoining (Millet) property. Therefore, these activities are not relevant to our inquiry into acts of possession on the subject batture.
We have examined the Supreme Court case of Bd. of Com'rs., Etc. v. S.D. Hunter Foundation, 354 So.2d 156 (La.1978), in which an adverse possessor was the defendant in a petitory action by the plaintiff landowner. The court there found that the possession of the tract in question was interrupted by construction of a pipeline (by the owner's grantee), together with its continuous acts thereafter in physically maintaining the pipeline right-of-way. We believe that the overt acts of maintaining the pipeline physically in that case were important in the ultimate finding that possession had been disturbed and distinguish them from the acts in this case.
If we were to find that the three-hour operation in and of itself was sufficient to interrupt possession, we would in effect require the plaintiffs to maintain a 24-hour *973 guard on the batture and we find no support for this constant vigil in the law or jurisprudence. Possession is lost when the possessor manifests his intention to abandon it or when he is evicted by another by force or usurpation. C.C. Art. 3433. There must be something to evidence the eviction in order to "bring home" this realization to the actual possessor. Actual knowledge by the possessor may not be necessary, but some substantial and readily observable physical signs that such action of eviction has taken place or is being conducted must be present in order to make the action public; there must be some easily visible evidence which could place a possessor "on notice."
We do not construe the articles on possession, and acquisitive prescription, to permit the pile-driving action of such short duration undertaken here by the defendants to start the running of prescription and dispossess actual bonafide possessors.
Therefore, it appears to this court that the only applicable other date from which prescription may have commenced to run was July 15, 1983, when the unmistakable intention of St. John to challenge the possession of the St. Pierre group became apparent to them by their unequivocable, continuous and public action.
According to Civil Code Article 3429:
Art. 3429. Exercise of possession by another
Possession may be exercised by the possessor or by another who holds the thing for him and in his name. Thus, a lessor possesses through his lessee.
Thus, the act of possession or disturbance of July 15th applies to both St. John and the Lasseigne defendants.
Accordingly, we hold that the instant possessory action filed on July 8, 1984, was timely filed and is not barred by prescription. Therefore, the learned trial judge should have overruled the exception and tried the case on its merits. We have no choice but to hold that his failure to do so constitutes manifest error.
For the foregoing reasons, the judgment in favor of defendants maintaining their exception of prescription is reversed and the matter is remanded for trial on the merits in conformity with this opinion.
Defendants are assessed all costs of this appeal.
REVERSED AND REMANDED.
NOTES
[1] C.C.P. Art. 3658 states:

Art. 3658. Same; requisites
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.