NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-352

JEFFERSON D. CAFFERY, JR.

VERSUS

BOBBIE MCGOLDRICK PISAURO, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20184308
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Candyce G. Perret, Judges.

AFFIRMED.

**James Paul Doherty, III**
**Katherine E. Currie**
**Becker and Hebert, LLC**
**201 Rue Beauregard**
**Lafayette, LA   70508**
**(337) 233-1987**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Jefferson D. Caffery, Jr.**

**Carl James Castille**
**100 Beauvais Avenue, Suite C-5**
**Lafayette, LA   70507**
**(337) 534-4718**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Bobbie McGoldrick Pisauro**
     **Gregory Johannon Hebert**

**PERRET, Judge.**

Jefferson D. Caffery, Jr. ("Appellant"), appeals a November 8, 2018 Judgment granting an exception of prescription filed by Bobbie McGoldrick Pisauro and Gregory Johannon Hebert (collectively referred to as "Appellees"), and dismissing one of Appellant's possessory action claims. On appeal, we affirm.

**FACTUAL AND PROCEDURAL HISTORY:**

Appellant and Mrs. Pisauro are adjacent property owners sharing a common boundary line. Mr. Hebert is Mrs. Pisauro's lessee. The record indicates that Appellant owns Lots 59 and 60 on Belle Homme Drive, which he purchased from Charlene Spath on May 18, 2004. Mrs. Pisauro owns Lots 57 and 58, according to a 2014 judgment of possession, and which she has leased to Mr. Hebert since approximately May 2017. There exists a concrete slab between Lots 58 and 59, which abuts a carport on Appellant's property ("Concrete Slab"). In front of the Concrete Slab is a strip of grass running from the slab to the roadway ("Grassy Strip"). Behind the Concrete Slab is a wooden gate which provides access to Appellant's fenced-in backyard. The fence that runs between Appellant and Mrs. Pisauro's property forms a zig-zag shape. It was later discovered, via a survey, that the Concrete Slab and Grassy Strip extend onto both parties' properties. Furthermore, a portion of the fence, including the portion with the gate access, encroaches on Mrs. Pisauro's property.

Appellant instituted a possessory action on July 12, 2018, titled "Petition for Breach of Peaceful Possession, for Restoration of Possession[,] and for Predial Servitude" seeking to have his possession restored against Appellees. Appellant asserted that he has peacefully possessed the Concrete Slab, Grassy Strip, and Fence since 2004, and that Ms. Spath did the same from 2001-2004. Furthermore,

Appellant suggests that the Concrete Slab has been present since at least 1972, according to a survey dated January 4, 1972. Appellant alleges that he used the Concrete Slab and Grassy Strip for parking and access to the Fence and that he mowed and maintained the Grassy Strip as well as all areas encompassed by the Fence. Appellant asserts that his peaceful possession of the Concrete Slab, Grassy Strip, and Fence was disturbed when Appellees installed a satellite dish on the Grassy Strip on July 12, 2017. Appellant further alleges additional disturbances have occurred since the satellite dish installation, such as Mr. Hebert and his guests parking on the Grassy Strip, dirt and an uprooted plant being dumped on the Grassy Strip, wooden stakes being installed on the Grassy Strip, and the construction of a tarp structure around the satellite dish. Appellant claims that these disturbances hindered his use of the Concrete Slab, Fence, and Grassy Strip. Although Appellant still attempts to mow the Grassy Strip, he is prevented from accessing the Fence and Concrete Slab with his utility trailers to unload vehicles stored in his backyard, and is also prevented from parking on the Concrete Slab or Grassy Strip as he has done since 2004. Thus, Appellant sought relief under La.Code Civ.P. art. 3660 to restore his possession of the Concrete Slab, Grassy Strip, and Fence. Alternatively, Appellant suggests that he is entitled to a predial servitude under La.Civ.Code art. 670.

Appellees filed Peremptory Exceptions of No Right and/or No Cause of Action, or in the Alternative, Peremptory Exception of Prescription. The exception of prescription, which is the sole exception at issue on appeal, is founded on the contention that the satellite dish was installed on July 7, 2017, and, thus, Appellant's petition was filed more than one year after his peaceful possession of the property was disturbed.

Following a hearing on the exceptions, the trial court signed a judgment on October 12, 2018, denying Appellees' exceptions of no right and no cause of action, and taking the exception of prescription under advisement. In accordance with its October 11, 2018 minute entry, on November 8, 2018, the trial court entered a Judgment on Exceptions sustaining the exception of prescription "with regard to the possessory action as it relates to the installation of the satellite dish." The November Judgment on Exceptions was appealed. This court in *Caffery v. Pisauro*, 19-396 (La.App. 3 Cir. 8/7/19) (unpublished opinion), determined that the November judgment lacked decretal language, dismissed the appeal, and remanded the matter to the trial court.

In accordance with this court's opinion, the trial court signed an Amended Judgment on Exception sustaining the exception of prescription and dismissing Appellant's "possessory action arising out of the installation of the satellite dish[,]" but maintaining any "possessory actions arising out of any and all subsequent disturbances-in-fact and [Appellant's] cause of action under Louisiana Civil Code article 670[.]" The Amended Judgment decrees that it is a "partial final judgment subject to immediate appeal." Appellant now appeals the Amended Judgment.

Appellant asserts three assignments of error on appeal: (1) the trial court erred by casting the burden of proof on Appellee's exception of prescription motion on Appellant, the non-moving party, (2) the trial court erroneously interpreted La.Code Civ.P. art. 3659 by using the satellite installation date as the date of the disturbance for prescription purposes, rather than the date that Appellant realized his possession was being challenged, and (3) the trial court erred in granting Appellees' exception of prescription after relying on unreliable testimony and hearsay evidence.

3

**ANALYSIS:**

We will first address Appellant's assignment of error two because it requires determining when prescription under La.Code. Civ.P. art. 3658 begins to run—from the date the physical act occurs, or the date that the possessor realizes his possession is being challenged. Appellant contends that the trial court erroneously interpreted La.Code Civ.P. art. 3659 in its determination that his claim was prescribed. Appellant asserts that, regardless of when the satellite dish was installed, his action was viable because prescription on a possessory action does not begin to run until the possessor realizes his possession was being challenged. Appellant asserts that he did not realize his possession was being challenged until July 12, 2017.

Statutory interpretation is a question of law, which is reviewed de novo on appeal. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36. The supreme court has instructed that statutory interpretation "starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature." *La. Mun. Assoc. v. State*, 04-227, p. 35 (La. 1/19/05), 893 So.2d 809, 836-37 (citations omitted). Furthermore, "[a] statute must be 'applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it.'" *Id*. at 837 (quoting *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03–360 p. 4 (La. 12/3/03), 860 So.2d 1112, 1116). "Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided." *Sultana*, 860 So.2d at 1116. The court's objective in interpreting a statute "is to ascertain

4

the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." *Smith v. Flournoy*, 238 La. 432, 447, 115 So.2d 809, 814 (La.1959).

Appellant argues, "[t]he jurisprudence requires that the actual possessor . . . must have the 'realization that his dominion is being seriously challenged.'" Appellant seems to suggest that prescription begins the date the possessor realizes his possession is being challenged.[1] We disagree.

Regarding possession, La.Code Civ.P. art. 3660 explains that "[a] person is in possession of immovable property . . . when he has the corporeal possession thereof, or civil possession thereof preceded by corporal possession by him or his ancestors in title, and possesses for himself, whether in good faith or bad faith, or even as a usurper." "Possession is a matter of fact; nevertheless, one who has possessed a thing for over a year acquires the right to possess it." La.Civ.Code art. 3422.

The possessory action is available to a possessor whose possession has been disturbed, by either a disturbance in fact or a disturbance in law, to be maintained in or restored to his possession of the property. *See* La.Code Civ.P. art. 3655; La.Code Civ.P. art. 3659; *Dickerson v. Axiall Corp.*, 19-813 p. 7 (La.App. 1 Cir. 7/8/20) (unpublished opinion). To be successful in a possessory action, the possessor must prove: (1) he had possession at the time of the disturbance; (2) he maintained his possession quietly and without interruption for more than one year immediately prior to the disturbance; (3) the disturbance was one set forth in

---

[1] For instance, Appellant states, "Although [Appellant] disputes such, even if the satellite had been installed on July 7, 2017, the record shows that [Appellant] realized on July 12, 2017[,] that his dominion was being seriously challenged by Hebert."

5

La.Code Civ.P. art. 3659; and (4) he instituted the possessory action within one year of the disturbance. La.Code Civ.P. art. 3658. Thus, "the plaintiff's suit is timely when filed within one year of the date of the disturbance sued upon." *Dickerson*, 19-813 at p. 12; *see also Souther v. Domingue*, 238 So.2d 264 (La.App. 3 Cir.), *writ denied*, 256 La. 891, 239 So.2d 544 (La.1970). A disturbance in fact is defined in La.Code Civ.P. 3659 as "an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment."

Both La.Code Civ.P. arts. 3658(4) and 3659 are clear. Prescription begins to run "within a year of **the disturbance**." La.Code Civ.P. art. 3658(4) (emphasis added). "[T]he disturbance" is then defined in La.Code Civ.P. art. 3659. A disturbance in fact is an "eviction" or "other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment." La.Code Civ.P. 3659. The second part of this sentence describes the type of physical act necessary to trigger La.Code Civ.P. article 3658(4). Thus, a clear reading of the statutes indicates that prescription begins on the date the disturbance occurs, not necessarily when the possessor realizes there has been a disturbance.

Our interpretation of La.Code Civ.P. art. 3659 is supported by *Boneno v. Lasseigne*, 534 So.2d 968, 973 (La.App. 5 Cir. 1988), which held that prescription under La.Code Civ.P. art. 3658 began once there was "some substantial and readily observable physical signs" or "easily visible evidence" putting a possessor on notice that his possession is being interrupted. In *Boneno*, the court considered whether certain acts in the construction of a barge fleeting facility constituted a

disturbance in fact to begin the running of prescription. The defendants argued that driving pilings along approximately 5,000 feet of riverbank began the tolling of prescription. However, the appellate court noted that the actual pile driving only took one to one and a half hours per piling location. Furthermore, after the pile driving was done, "the only visible signs that anything had been done were the buoys floating in the river." *Id.* at 971. Thus, the court concluded that the act of pile driving under these facts did not constitute a disturbance in fact that would begin prescription. In other words, the physical act of pile driving was not of such a duration and visibility that it constituted an act sufficient to interrupt another's possessory right. Importantly, the court noted "[a]ctual knowledge by the possessor may not be necessary, but some substantial and readily observable physical signs that such action of eviction has taken place or is being conducted must be present . . . there must be some easily visible evidence which could place a possessor 'on notice.'" *Id.* at 973.

Similarly, the court in *Meaux v. Miller*, 09-1018 (La.App. 3 Cir. 3/10/10), 33 So.3d 406, determined that production from a well in a unit to which the disputed property belonged, but which was not located on the disputed property, was a disturbance in fact and began the running of prescription under La.Code Civ.P. art. 3659.

In this case, the satellite installation was a readily observable physical act. The dish was visible in the Grassy Strip located in front of the Concrete Slab and near where Appellant parks his vehicle. In fact, Appellant attested that the dish "disturbed [his] use of the Concrete Slab, Grassy Strip and Fence" and prevented him from maintaining the grass and accessing the Fence and Concrete Slab with his utility trailer. Clearly, the installation of the dish was of such a degree that it

7

would put Appellant on notice that his possession was being challenged. Accordingly, we find no merit to Appellant's assertion that the trial court erred in interpreting La.Code Civ.P. art. 3659.

Appellant's first and third assignments of error challenge whether the trial court appropriately placed the burden of proof on Appellant and whether the trial court properly concluded that Appellant's claim was prescribed. As previously stated, the plaintiff in a possessory action must prove that he instituted the possessory action within one year of the disturbance. La.Code Civ.P. art. 3658(4).

Ordinarily, the party pleading prescription bears the burden of proving prescription by a preponderance of the evidence. *Labbe Serv. Garage, Inc. v. LBM Distrib., Inc.*, 94-1043 (La.App. 3 Cir. 2/1/95), 650 So.2d 824. However, if prescription is evident on the face of the petition, the burden shifts to the non-moving party to prove that the action is not prescribed. *Rizer v. Am. Sur. and Fidelity Ins. Co.*, 95-1200 (La. 3/8/96), 669 So.2d 387.

The appellate standard of review applied to a peremptory exception of prescription depends on whether evidence was submitted at the trial court. *N. G. v. A. C.*, 19-307 (La.App. 3 Cir. 10/2/19), 281 So.3d 727. When evidence is not submitted, "the judgment is reviewed simply to determine whether the trial court's decision was legally correct." *Id*. at 733 (quoting *Arton v. Tedesco*, 14-1281, p. 3 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, 1128, *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043). However, when evidence is adduced, factual findings of the trial court are reviewed under the manifest error analysis. *Specialized Loan Servicing, LLC v. January*, 12-2668 (La. 6/28/13), 119 So.3d 582; *Smith v. Vick Inv., LLC*, 19-622 (La.App. 3 Cir. 6/3/20), 298 So.3d 288, *writ denied*, 20-830 (La. 10/14/20) 302 So.3d 1114. Under the manifest error analysis, "the appellate court

8

should not disturb the factual findings of the trial court absent manifest error." *Kilpatrick v. Saline Lakeshore, LLC*, 15-917, p. 3 (La.App. 3 Cir. 2/24/16), 185 So.3d 350, 352. Furthermore, when the trial court makes credibility determinations, those findings demand great deference. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). But, "where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." *Evans v. Lungrin*, 97-541, 97-577, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735.

In this case, prescription is not evident on the face of the petition. Appellant alleged that the satellite dish, the disturbance in fact, was installed on July 12, 2017, and his petition was filed on July 12, 2018. Thus, the initial burden on the exception of prescription rested on Appellees. *Labbe*, 650 So.2d 824. However, in his assignment of error, Appellant asserts that the trial court committed legal error by casting the burden of proof on Appellant, thus requiring a de novo review on appeal. Appellant argues that this error is evident in the court minutes. Appellant also argues that the trial court erred in burdening Appellant with the burden of proof without first requiring Appellees to prove prescription by a preponderance of the evidence, and that the trial court erred in relying on unreliable testimony and hearsay evidence in concluding that his claim had prescribed. Upon review of the record, we find no merit to these arguments.

To prove their motion at the exception hearing, Appellees presented Mr. Hebert who testified that the satellite was installed on July 7, 2017, and that he was present for the installation. Mr. Hebert testified as follows:

A    . . . . On July 7th of 2017, I installed a satellite dish in the front of the property, which I have pictures, and I also have emails, stating that the satellite dish was installed July 7th. I was present at the time. They had to access the inside of the house in order to complete the job.

. . . .

Q    Were you present when they installed the satellite dish?

A    Yes, sir.

Q    Can you explain what went on when they installed it?

A.    Yes, sir, I can. Actually, when the representative came to install the satellite dish, I even asked him to put the satellite dish on the roof because I didn't want it on the ground. He said that he couldn't, so he put it in front of the property, which is in front of - - there's a retaining wall. I have a picture of it here (indicating). It's like three or four feet away from my property line.

While Appellant did not cross-examine Mr. Hebert, he did object to his testimony and the documents he referenced therein. Appellant filed a Supplemental Memorandum in Opposition to Peremptory Exception of Prescription alleging, as he does on appeal, that Mr. Hebert's testimony was unreliable and could not meet the preponderance of the evidence burden to prove prescription. Appellant asserted that Mr. Hebert's testimony was unreliable because he represented that photographs taken by him established that the satellite dish was installed on July 7, 2017, but the pictures are labeled with later dates written by Mr. Hebert. We disagree with this categorization of Mr. Hebert's testimony. At no time did Mr. Hebert testify that he relied on the photographs to supply him with the date of the satellite installation. Mr. Hebert's testimony, from his personal knowledge, was that the satellite dish was installed on July 7, 2017. As the trial court is given great discretion in weighing witness credibility, we find no error in the trial court accepting Mr. Hebert's testimony.

Appellant also contends that the trial court considered hearsay evidence in determining that Appellees proved prescription by a preponderance of the evidence. During his testimony, Mr. Hebert referenced receiving an email purporting to be from a customer service representative of Hughes Net Support. The email was admitted over Appellant's objections. That email does not appear in the appellate record. However, the email is not necessary in our review. Mr. Hebert did not rely on the email in testifying that the satellite installation occurred on July 7, 2017. Instead, he merely noted that he had an email corroborating his testimony. Mr. Hebert's testimony alone supports the trial court's judgment.

Once Appellees presented testimony regarding the installation date, the burden was then on Appellant to come forward and prove that his claim was not prescribed. To do so, Appellant introduced two of his own affidavits. Appellant attested that he discovered the satellite dish when he returned home from work on July 12, 2017. He took a photo of the satellite dish that day, which is date-stamped, and attached it as an exhibit to his affidavit. Appellant also attested that he was home in the morning and after work on July 11, 2017, and that he did not observe the satellite dish at those times.

Considering the evidence submitted, the trial court properly shifted the burden to Appellant once Mr. Hebert testified that the satellite installation occurred on July 7, 2017. We find no error in the trial court placing the ultimate burden on Appellant to prove that his claim was timely. Additionally, the satellite installation was a "physical act" which amounted to a disturbance in fact and began the tolling of prescription. We find no error in the trial court's credibility determinations and factual finding that the satellite dish was installed on July 7, 2017. Appellant did

not file his petition until July 12, 2018.  Thus, the trial court correctly adjudicated Appellant's claim regarding the satellite dish as prescribed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.