BRUNOT, Justice.
 

 This is a possessory action. The petition contains all of the necessary allegations in a suit of this kind, and the prayer of the plaintiffs is for a rule upon the defendants to show cause why a preliminary injunction should not issue restraining them, or their agents or representatives, from going on, setting traps on, or otherwise trespassing upon the property described in their petition.
 

 
 *69
 
 The three respective groups of defendants have filed separate answers to the rule. In their answers each of said groups specifically deny every material averment of the plaintiffs’ petition which relates to them. The answer of the Constantin heirs contains detailed recitals of the acquisition, ownership, and possession of the property involved in. this suit. The substance of their defense is that they and their authors in title have been in the real and actual possession, quietly and without interruption, as owners under reeoi'ded titles, for more than thirty years, of a large expanse of land, in an unbroken line, along the east bank of Bayou Lafourche, in Township 21 South, Range 22 East, including the lands described in the plaintiffs’ petition. In due course the rule was heard; it was recalled and vacated, the preliminary injunction prayed for was denied, and the suit was dismissed. The plaintiffs obtained an order of appeal and perfected their appeal.
 

 We have carefully considered the entire record, and we find that the learned trial judge has accurately stated the facts and correctly adjudged the issue the pleadings present. We therefore adopt his opinion as our own and quote therefrom the following:
 

 “The record clearly establishes that (whatever actions they did or engaged in, in relation to the property concerned) Oscar Bourg and Levy Cheramie so did and acted as the agents of the Constantins, with the consent and authority of said Constantins, also named as codefendants herein.
 

 “Por the purposes of this cause, therefore, the question for consideration is one flowing from the antagonistic pleadings as presented by plaintiffs and the defendants, Constantins.
 

 “In effect, their contentions are similar from their respective points of presentation.
 

 “Each avers actual possession, as owner, for in excess of a year prior to the disturbance of which plaintiffs complain and represents said possession to have been peaceable, quiet, and uninterrupted.
 

 “In this situation, the question posed is this, ‘Which, if either, of the contestants was in fact in the enjoyment of the asserted actual possession of the property, in excess of the claimed one year? Or, rather, does the record satisfactorily establish such possession in the plaintiffs?’ If so, they must be accorded the relief prayed for; if not, their prayer must be denied.
 

 “It may be noted that both plaintiffs and the defendants have pleaded, and have offered in evidence in support of, title to the lands involved.
 

 “Since title is not at issue and cannot be determined in a possessory action, evidence thereof is only pertinent to the extent it may make clear the character and extent of possession claimed or proven by one or either of the litigants.
 

 “The titles asserted and the proof in support thereof, submitted by each of the contestants, discloses that each believes himself to possess as owner, by reason of a good and sufficient title; and that this fact, considered in connection with the severally alleged subsequent acts and facts evidencing actual possession over a period of more, than a year prior to the disturbance complained
 
 *71
 
 of, conclusively determines the issue of ‘possession’ in his favor.
 

 “It is admitted that John B. Pittman, for a number of years prior to 1881, had a written title to the involved lands and paid the taxes thereon.
 

 “The presumption is that, during that period, he possessed conformably to his title and to the full extent of its limits—
 

 “ ‘No physical act, in taking possession, is necessary under a sale by notarial act. The intention, of the purchaser, which the law presumes, coupled with the power which the act of sale gives, vests the possession in him. The right is taken for the fact, and the buyer is seized of the thing corporally by the execution of the title.’ Ellis v. Prevost, 13 La. 230.
 

 “Once vested with such possession, the intention to continue therein is presumed to persist and to preserve the ‘possession’ of such ‘title-holder,’ and continues (whether or not the possessor actually occupies and detains the thing),
 

 “ ‘until he is disturbed in fact or in law.’ Id.
 

 “Barring such a disturbance ‘in fact or in law’ (continuing for more than a year), John B. Pittman, his heirs or assigns would be presumed to have continued to enjoy their initial possession, and entitled to provoke the possessory action in vindication thereof.
 

 “However, the record shows that in 1881, a body of lands including the particular tracts now involved (assessed to unknown owners), was advertised and sold by the sheriff of the parish of Lafourche (for unpaid taxes) to Milien Bernard. The evidence likewise satisfies the court that Milien Bernard went into actual possession thereof, as owner, residing thereon and making such use thereof as conformed with its nature and his desires and needs.
 

 “Whether or not such title is good and valid as against the present plaintiffs, is not now pertinent or material—the present issue being one of ‘possession’ only.
 

 “The point is that Milien Bernard, acquiring title at a publicly advertised ‘tax-sale’ by a governmental officer, the sheriff of the parish of Lafourche had a right to regard himself as a legal vendee (after the lapse of prescribed delays for legal redemption, by the tax debtors), and obviously regarded himself as ‘the owner,’ hence he went into possession ‘as owner.’
 

 “That he so intended, and did possess as owner is amply evidenced by his general attitude thereafter towards the lands described in his tax deed—not only did he occupy them as master and controller, but, at various times, and at his pleasure, he sold parcels therefrom to three different people—indisputable evidence that he considered and held himself out as possessing them ‘as owner.’ His title and the recited acts amounted to a disturbance in fact, if not in law.
 

 “Thereafter, in said character of possessor ‘as owner’ he remained on the property until his death, after which time his widow and heirs continued to treat and possess the property ‘as owner,’ as is evidenced by their sale to Constantin, the father of defendants, in 1905, and their personal retention of other parcels thereof.
 

 
 *73
 
 “Eugene Constantin’s acquisition in May, 1905, clothed him with the same rights and presumptions as to intention and ‘nature and extent’ of possession, as were inherent in John B. Pittman in and prior to 1881. In the enjoyment of those rights and presumptions of the law, as to the character, nature, and extent of their possession, Eugene Constantin and his heirs must remain, ‘until they have been shown to have been disturbed therein in fact, or in law.’ That is, after May, 1905, for a period in excess of a year.
 

 “The acts and facts chiefly relied upon by plaintiffs to evidence possession in themselves during that period are the payment of taxes, the granting of a mineral lease and two trapping leases, the surveying of a portion of the lands by the holder of the mineral lease, and the alleged trapping of a portion of the property by trappers authorized so to do by the holder of the trapping lease.
 

 “As concerns the payment of taxes, it is established that even if the plaintiffs did continue to pay taxes which they understood were assessed against these particular lands as their property, the defendants themselves also paid annually assessed taxes apparently correctly presumed by them to have been assessed against the property now claimed, as their property.
 

 “While the court believes the plaintiffs to have been in good faith in making such payments, the defendants were equally so. And the payment of taxes so made by the plaintiffs did not amount to a disturbance in fact or in law of the continued possession of the defendants who were also equally in good faith, meeting all the assessments assessed against them.
 

 “Neither the granting of a trapping or mineral lease amounts to a disturbance in law or in fact against the established possession of a third person, not a party to such lease. The actual disturbance, if any, must be accomplished by some actual deed or act that ‘brings home’ to the ‘actual possessor,’ the realization that his dominion is being seriously challenged. That is not accomplished by the execution of contracts to which he is a stranger.
 

 “A disturbance, if made, must also be supplemented by a continuance of more than a year, in order to warrant the disturber in invoking the possessory action. Such trapping as is alleged to have been done on said lands under the authority of the lease granted to Mr. Authement continued not more than two and one-half or three months (during the winter trapping season) —then being abandoned until the advent of another season. They never approached a year in duration, and never at any time covered the entire area now involved, and do not establish an ouster of ‘possession’ — hence are not suflicient to vitalize a possessory action.
 

 “Nor does the court deem that the proven activities of surveyors employed by the holder of a mineral lease from the plaintiffs were of such character or nature as to evidence an ouster of defendants from their presumed ‘continued possession’ as owners, flowing from the sale to their ancestor in 1905 and their own acts and presumed intentions since the death of their father.
 

 
 *75
 
 “The surveying was not accompanied with any outward notice or warning that it was intended as an assertion of sovereignty or control over the property; indeed, it is not shown that defendants were ever notified or made aware of an intention to disturb their possession, or that the surveying was being, or had been, done by persons assuming to have any authority or right of entry over or to the lands in question.
 

 “Surveying operations are not generally regarded as a trespass — generally they are regarded as rather seekers after information, in the course of which it is not unusual for surveyors to run ‘trial’ or ‘random’ lines to which no importance is attached, other than as they may be of assistance in reaching conclusions, perhaps, not at all affecting particular properties across which they may have been extended.
 

 “While surveying operations may be engaged in for the purpose of determining whether or not, to attempt a disturbance of some one’s apparent ‘possession,’ the disturbance in fact usually awaits and follows consideration of the information gathered from the survey. Thus an overt act that follows, rather than the survey itself, evidences an intention to challenge possession and constitutes the ‘disturbance in fact.’
 

 “In the instant case, the surveys made as testified to have not been followed up by an overt act challenging the rights of the ‘possessor in fact,’ and actually interrupting or disturbing his peaceable and quiet possession.
 

 “For instance, no attempt has been made by the mineral lessee to search for minerals thereon, to establish any works thereon, or to locate or sink any well or mine thereon; or in any way to interfere with the apparent control and enjoyment thereof.
 

 “Finding, since 1905 (when Eugene Constantin acquired an apparent title thereto), no intex-ruption or disturbance at the hands of the plaintiffs of the possession which he and his heirs are presumed to have continued to hold and enjoy — particularly no disturbance of a year’s duration — and further failing to find that the plaintiffs were in undisturbed, quiet, and peaceable possession thereof during a period of
 
 more
 
 than a year immediately preceding the date of the acts xxow charged against the defendants, it necessarily results that they cannot succeed in a possessory action.
 

 “Failing to find that the plaintiffs or their authors in title have at any time, since the tax sale of 1881 (and the succeeding actual, physical possession of Milien Bernard, in the manifest .intention and character of ‘owner’), actually disturbed the real possession of Milien Bernard, his heirs and assigns, for the period of one year; and that they did not eixjoy such possession for such period immediately preceding the reprobated acts of the defendants — it is not possible to hold that such acts were in fraud of plaintiffs’ rights; nor do the facts proven in connection therewith warrant the assertion that they were perpetrated ‘with fraud and violence,’ as alleged by plaintiffs.
 

 “By agreement of all parties, placed in the record, the court was authorized, in addition to pronouncing upon the prayer for a preliminary injunction, to dispose of the entire matter on its merits.
 

 
 *77
 
 “Since the controversy • presents only the question of ‘possession,’ a decision on the merits must necessarily he confined to a determination of the single question of ‘possession.’ ”
 

 For the reasons stated, the judgment appealed from is affirmed at appellants’ cost.
 

 O’NIELL, C. J., absent.