Judgment rendered September 25, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,888-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JAMES D. MADDEN AND LYDA            Plaintiffs-Appellees
ROBERTS MADDEN

versus

MARY ELIZABETH CHUMLEY,             Defendant-Appellant
IN HER CAPACITY AS
EXECUTRIX OF THE
SUCCESSION OF JOHNYE MAE
MADDEN

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 76564

Honorable Michael Nerren, Judge

* * * * *

HARPER LAW FIRM, APLC              Counsel for Appellant
By:  Jerald R. Harper
     Anne E. Wilkes

J. SCHUYLER MARVIN                 Counsel for Appellees

* * * * *

Before PITMAN, STONE, and STEPHENS, JJ.

PITMAN, J., concurs in the result.

**STONE, J.**

This appeal arises from a possessory action instituted by plaintiffs and spouses, James D. Madden ("James") and Lyda Roberts Madden ("Lyda"), seeking to be recognized as the owners and possessors of the immovable property in dispute. Following a hearing and bench trial on the merits, the trial court denied the defendant, Mary Elizabeth Chumley's ("Beth"), exception of no cause of action, and granted a judgment of possession in favor of the plaintiffs. From this judgment, the defendant appeals. We affirm for reasons other than those assigned by the trial court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

James and Lyda filed a possessory action against Beth, in her capacity as executrix of the Succession of Johnye Mae Madden, seeking to be recognized as owners and possessors of the immovable property in dispute. James and Beth are siblings, and the descendants of Johnye Mae Madden ("Johnye") and Grady Madden ("Grady") (collectively referred to as "the elder Maddens"). The plaintiffs purchased an 88-acre tract of land from Roy Fincher in 1969 and began construction of their home shortly thereafter. In 1981, with the permission of James and Lyda, began construction of their home. Upon completion of their home, the elder Maddens moved into their home (between 1981 and 1982) continued to occupy the residence together until Grady's death in 1988. Thereafter, Johnye remained in their home until her death on January 26, 2016.

On October 24, 2017, the Maddens filed a possessory action alleging that in January of 2017, Beth filed a preliminary detailed descriptive list of the property subject to Johnye's succession, which included the disputed immovable property that gave rise to this suit ("disputed property"). In the

preliminary detailed descriptive list, Beth referred to James as the "former owner" of the disputed property. On April 6, 2018, Beth filed her answer to the plaintiff's petition where she admitted that the property was sold to the plaintiffs. However, she stipulated that she believed the land was purchased by the family company, Madden Contracting, LLC, for the benefit of the Madden family. She also admitted that a residence was built on the disputed property, but again, upon the information and belief that the construction costs were paid for through funds from Madden Contracting, LLC.

On August 6, 2018, Beth received notice from the trial court setting a bench trial on the merits for September 26, 2018. Thereafter, the plaintiffs sought to amend their petition to include the following paragraph:

> Plaintiffs may use expert opinions in the prosecution of this matter to assist the trier of fact. If so, their fees and costs should be taxed as costs of the court and assessed against the defendant.

There is some ambiguity in the record as to the date that the plaintiffs' motion to amend was filed. The clerk's office file-stamped the motion to amend on August 29, 2018; however, the record indicates that the trial court granted the plaintiffs' motion to amend on August 23, 2018. Beth received a citation without a copy of the plaintiffs' amended petition on September 11, 2018. Counsel for Beth sent correspondence to the trial judge requesting a status conference to address the following issues: 1) the current stay order in the related succession proceeding which precluded any further filings; and 2) the plaintiffs' amendment which indicated the possibility of expert witnesses offering testimony at the bench trial.

A week before trial on September 19, 2018, Beth filed a motion to continue, a motion in limine "to exclude and/or limit the trial testimony of

Morris Guin and to limit the testimony of James and Lyda Madden," and an exception of no cause of action. On September 26, 2018, the trial court heard arguments on the motion to continue only, and subsequently granted it. The trial court set the new trial date for October 18, 2018.

On October 18, 2018, before trial began, the court heard arguments on Beth's exception of no cause of action, which was ultimately denied. In addition, Beth's motion in limine was granted in part and denied in part. Immediately after the pronouncement of the ruling, the bench trial began. The plaintiffs called Beth, James, Morris Guin, and Charles Smith to testify. Beth elected, however, to refrain from calling any witnesses to testify. The trial court subsequently ruled in favor of the plaintiffs, finding that James and Lyda carried their burden entitling them to a judgment of possession. This devolutive appeal ensued.

## DISCUSSION

*Applicable Law*

The possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted. La. C.C.P. art. 3655. In a possessory action, the burden of proof is upon the plaintiff to establish the essential elements thereof. *Strain v. Aaron*, 49,647 (La. App. 2 Cir. 2/27/15), 162 So. 3d 553; *Saunders v. Hollis*, 44,490 (La. App. 2d Cir. 8/19/09), 17 So. 3d 482, *writ denied*, 2009–2221 (La.12/18/09), 23 So. 3d 945.

To maintain the possessory action, the possessor must allege and prove that (1) he had possession of the immovable property or real right

3

therein at the time the disturbance occurred; (2) he and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud; (3) the disturbance was one in fact or in law, as defined in La. C.C.P. art. 3659; and (4) the possessory action was instituted within a year of the disturbance. La. C.C.P. art. 3658.

Disturbances of possession which give rise to the possessory action are of two kinds: disturbance in fact and disturbance in law. A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment. A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right. La. C.C.P. 3659.

For a disturbance to be sufficient to interrupt another's right to possess, the disturbance must bring home to the actual possessor the realization that his dominion is being seriously challenged. *Graham v. McRae Expl., Inc.*, 493 So. 2d 705 (La. App. 2 Cir. 1986); *Harvey v. Harvey*, 431 So. 2d 786 (La. App. 1 Cir.1983). As indicated in *Harvey, supra*, the Louisiana Supreme Court has noted that "a question often arises as to what type of activity by an adverse party will sufficiently interrupt a person's right to possess so as to usurp his possession and strip him of his right upon passage of more than a year's time." *Harvey, supra.*

4

A review of Louisiana jurisprudence reveals that for a disturbance to be sufficient to interrupt another's right to possess, the disturbance must bring home to the actual possessor the realization that his dominion is being seriously challenged. *See Pitre v. Tenneco Oil Co.*, 385 So. 2d 840 (La. App. 1 Cir. 1980), *writ refused*, 392 So. 2d 678 (La. 1980). Louisiana courts have found the following acts insufficient to interrupt another's possession: the surveying and marking of boundary lines, *S. D. Hunter Found. v. Bd. of Comm'rs*, 286 So. 2d 525 (La. App. 2nd Cir.1973); sporatic trapping, chicken farming, hunting and leasing a house in the vicinity, *Plaisance v. Collins*, 365 So. 2d 608 (La. App. 1 Cir. 1978); granting of trapping, grazing and mineral leases, *Pitre v. Tenneco Oil, supra* (La. App. 1st Cir.1980); and occasional hunting, *Norton v. Addie*, 337 So. 2d 432 (La. 1976). *Harvey, supra*.

The manifest error applies to the trial court's finding as it relates to possession, and will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. *See Strain v. Aaron, supra*. However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. *See Graphic Packaging Int'l, Inc. v. Lewis*, 50,371 (La. App. 2 Cir. 2/3/16), 187 So. 3d 499; *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So. 2d 742; *McLean v. Hunter*, 495 So. 2d 1298 (La. 1986); *Picou v. Ferrara*, 483 So. 2d 915 (La.1986); *Suhor v. Gusse*, 388 So. 2d 755 (La. 1980). Additionally, a court of appeal reviews de novo a lower court's ruling sustaining an exception of no cause of action

because the exception raises a question of law and because the lower court's decision is generally based only on the sufficiency of the petition. *Villareal v. 6494 Homes*, LLC, 48,302 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1246.

Before evaluating the merits of this appeal, we must first determine the proper standard of review to be applied. At the outset of this appeal, we recognize that the appellate standard to be applied and every assignment of error, with the exception of one, hinges upon our determination of whether the plaintiffs have pled sufficient facts to establish the occurrence of a disturbance in fact or a disturbance in law by a preponderance of the evidence submitted in the record.

In this case, we will review the entire trial record de novo because Beth is appealing the denial of her exception of no cause of action through one of her assignments of error. However, we also want to note that we find that the trial court committed a legal error which interdicted the fact-finding process by creating a third category of disturbance which we will discuss in greater detail in subsequent sections of this opinion. Because the key issue surrounding this appeal is whether the actions alleged by the plaintiffs are sufficient to constitute a disturbance in fact or law, we will evaluate the merits of Beth's first three assignments of error together.

*Analysis*

Beth argues that the trial court erred, as a matter of law, in denying her exception of no cause of action based on the plaintiffs' failure to prove either a disturbance in fact or disturbance in law. Further, she contends that James and Lyda failed to plead *either* a disturbance in fact or a disturbance in law within one year of filing the possessory action. In support of this argument, Beth cites the following claims listed in the plaintiffs' original

petition for possessory action:

> In January of 2017, Chumley, as executrix of Johnye's succession, filed a Preliminary Detailed Descriptive List of Properties in the succession proceeding in which she described Johnye's residence as follows:
>> "All of Decedent's right, title, and interest in and to Webster Parish, Louisiana immovable property formerly owned by James D. Madden in the SW/4 of SW/4 and the SE/4 of S/W, Section 23, Township 19 North, Range 9 West, together with all buildings and improvements situated thereon."
>
> ***
>
> In response to the discovery conducted in Johnye's succession Chumley later confirmed that she is claiming that Johnye acquired an unidentified portion of the Land by virtue of acquisitive prescription.
>
> ***
>
> Chumley's disclosure in her Preliminary Detailed Descriptive List of Properties and subsequent discovery responses, that she is claiming ownership of a portion of the Land for Johnye's estate, constitutes actual notice required by Art. 3439 necessary to convert her precarious possession into adverse possession and constitutes a disturbance in law of Petitioner's peaceful possession of the land.
>
> ***

Disturbance in Fact

Beth argues that the only disturbance in fact alleged in the plaintiffs' petition is an attempt to survey the disputed property. The presence of a crew, for the purposes of getting an estimate for a new roof on Johnye's house – and who did not even conduct the survey – who, according to James' own representations, "left without incident," is not sufficient, as a matter of law, to create a disturbance in fact.

Beth maintains that Louisiana jurisprudence has already defined what actions constitute a disturbance in fact, and provided specific examples, which do not include surveying and the marking of boundary lines. *See S. D. Hunter Found. v. Bd. of Comm'rs of Caddo Lake District, supra*, 286 So. 2d 525 (La. App. 2d Cir. 1973). The Louisiana Supreme Court discussed

7

surveying property, without any other additional action(s), does not

constitute a disturbance for possession purposes, stating:

> 'Surveying operations are not generally regarded as a trespass – generally they are regarded as rather seekers after information, in the course of which it is not unusual for surveyors to run 'trial' or 'random' lines to which no importance is attached, other than as they may be of assistance in reaching conclusions, perhaps, not at all affecting particular properties across which they may have been extended.
> 'While surveying operations may be engaged in for the purpose of determining whether or not, to attempt a disturbance of some one's apparent 'possession,' the disturbance in fact usually awaits and follows consideration of the information gathered from the survey. Thus an overt act that follows, rather than the survey itself, evidences an intention to challenge possession and constitutes the 'disturbance in fact.'
> 'In the instant case, the surveys made as testified to have not been followed up by an overt act challenging the rights of the 'possessor in fact,' and actually interrupting or disturbing his peaceable and quiet possession. *See Pittman v. Bourg*, 179 La. 75, 153 So. 22 (1934).
>
> \*\*\*

Disturbance in Law

Beth also maintains that the above-referenced actions cited in the

plaintiffs' petition do not amount to a disturbance in law because La. C.C.

art. 3659 contains an applicable exception:

> A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof ***except in an action or proceeding, adversely to the possessor of such property or right***. (Emphasis added.)

In this case, she contends that the filing of the Preliminary Detailed

Descriptive List is not a disturbance in law because she filed it in the

succession proceeding, which is adverse to the possessors James and Lyda.

She contends that the Preliminary Detailed Descriptive List is not a

disturbance in law because it was filed in the succession proceeding, which already employs a method of disputing claims.

Moreover, she argues that there is ample jurisprudence which has held that as a matter of law, the Preliminary Detailed Descriptive List cannot be a "disturbance in law." *See Naquin v. Bollinger Shipyards*, 2013-1638 (La. App. 1 Cir. 5/2/14), *writ denied*, 2014-1091 (La. 9/12/14), 148 So. 3d 933; *Karst v. Ward-Steinman*, 469 So. 2d 440 (La. App. 3d Cir. 1985) (finding that petition for possessory action failed to state a cause of action where the only disturbance alleged was a disturbance in law in the form of an eviction suit, which is precluded by La. C.C.P. 3659); *Bodcaw Co. v. Enterkin*, 273 So. 2d 325 (La. App. 3d. Cir. 1973) (affirming the granting of an exception of no cause of action where the only disturbance in law alleged in a possessory action was the filing of a lawsuit wherein the defendant in the possessory action claimed ownership of the property at issue). Therefore, Beth argues, the trial court's failure to acknowledge the exclusionary language contained in La. C.C.P. 3659 is not supported by either a plain reading of the statute or jurisprudence addressing the issue. Beth maintains that the trial court inexplicably created a third, hybrid category of disturbance by partially adding some of the requirements for a disturbance in fact and disturbance in law to meet this element in a possessory action. In support, Beth cites the trial transcript where Judge Nerren gave his oral reasons for judgment at the conclusion of the bench trial, stating:

> The one [case] that is very interesting to consider is the Pittman v. Bourg case. And in the Pittman versus Bourg case, they state, and I quote, "The surveying was not accompanied with any outward notice or warning that it was intended as an assertion of sovereignty or control over the property." So that was the language I believe Mr. Harper is using to say that a survey in and of itself is not sufficient, and I agree with that, but

9

here, we don't have a survey independent of other actions. Now I think that the Pittman versus Bourg case dealt with actions that occurred subsequent to the survey. In other words, if a survey occurred in general, it's not enough, but then if somebody was to act subsequent to that survey or try to take possession of property within the survey bounds, then that would be enough. So it's a survey plus. Here its not actions taken after the survey. It was actions taken before the survey. In other words, there was a preliminary descriptive list of property… as properly [sic] formally [sic] owned by James D. Madden. So in this case, you have a survey plus. Actually, you have the plus first, but there's something other than the survey by itself. So I think the fact that this preliminary detailed descriptive list was filed setting forth a claim adverse to Mr. Madden's ownership, which he testified that's the way he interpreted it, and they the survey following, which would support what was filed in the detailed descriptive list. And again, I note that that was signed by Ms. Chumley and notarized. I think the survey plus issue is present. So I find that a disturbance in fact exists. Again, I do not find it solely based on the survey, but I find it based on the preliminary descriptive list.

\*\*\*

She argues that this concept does not exist under Louisiana law; neither by statute, nor jurisprudence. Beth further contends that the trial court has interpreted *Pittman v. Bourg, supra,* incorrectly; rather, the case correctly holds that a survey is not a disturbance in fact.

In the matter *sub judice*, while we agree with Beth's argument regarding the trial court's finding of a disturbance in fact, we reject her argument regarding the statutory exception to a disturbance in law. It is a well-settled principle within Louisiana law that surveying operations are not sufficient to constitute a disturbance in fact. More importantly, as the trial court and appellant have previously mentioned, the survey of the disputed property was incomplete because **James asked the survey crew to leave before it even commenced**. Therefore, we find that the trial court erred in finding that the act of an attempted survey had any authority to help

10

establish that the plaintiffs had proven every element of their possessory action by a preponderance of the evidence.

However, we cannot find that the trial court erred in finding that the filing of the Preliminary Detailed Descriptive List in the succession proceeding constitutes a disturbance in law. Beth filed the Preliminary Detailed Descriptive List in the public records, which contained an overt and unequivocal claim to ownership of the disputed property by the inclusion of the language "formerly owned by Mr. James Madden." Moreover, we find that the exclusionary language of Article 3659 is inapplicable to the instant matter because the very nature, purpose, and remedies associated with the succession proceeding are not adverse, in and of itself, to James and Lyda.

A review of the limited case law identifies eviction proceedings and actions instituted to assert ownership, which by their very nature are directly adverse to another's possession or ownership, as exceptions to disturbances in law. We find that the act of filing of the preliminary descriptive list and contained language therein, which stated that the disputed property was "formerly owned by James Madden," **does not satisfy the exception** within the meaning of Article 3659.

*Testimony of Expert Witness Charles Smith*

By her fourth and final assignment of error, Beth argues that the trial court erred by admitting the trial testimony of expert witness Charles Smith ("Mr. Smith") regarding his opinion on the effect of Beth's filing of the preliminary descriptive list in the succession matter. Over the objections of Beth's counsel, Mr. Smith was qualified as an expert in "land, titles, title examination, opinions, and matters pertaining thereto" during the trial on the merits. Beth argues that this error was not harmless because she believes the

trial judge expressed that he gave some weight to Mr. Smith's testimony when he discussed that the preliminary detailed descriptive list would be a cloud on the title or an exception for insurance purposes.

Beth maintains that Mr. Smith's testimony regarding the ownership and title of the property, for the purpose of discussing the effects that the Preliminary Detailed Descriptive List would have on title insurance, was inadmissible under La. C.C. art. 3661. In support, she cites *Board of Trustees of La. Annual Conference of the United Methodist Church v. Revelation Knowledge Outreach Ministry*, 13-814 (La. App. 5 Cir. 5/28/14), 142 So. 3d 353, where the Fifth Circuit held that courts cannot investigate the validity of title and whether such title is "good and valid" is not material. Thus, Beth urges that the trial court's decision to allow this portion of Mr. Smith's testimony was erroneous.

We disagree. Prior to Mr. Smith's testimony, Beth's attorney questioned him regarding the subject matter for which he was retained and qualified to offer an expert opinion. While qualifying Mr. Smith as an expert, the following exchange occurred:

MR. HARPER: In this case, have you been retained to opine about disturbances in law?

MR. SMITH: I was requested to see if there were disturbances to the title. Correct.

MR. HARPER: To the title. But are you aware that there's a legal term of art that's used in a statute called disturbance in law?

MR. SMITH: Yes, sir.

MR. HARPER: Okay. Have you been retained to express an opinion on disturbances at law?

MR. SMITH: Not specifically, no, sir.

12

MR. HARPER: Okay. Have you been retained to provide any opinions on disturbances in fact?

MR. SMITH: That would be a - - no, sir. That would be a fact issue for the Court.

* * *

During direct examination, the substance of Mr. Smith's testimony dealt with hypothetical situations of how he would assess and manage the filing of the Preliminary Detailed Descriptive List. A review of the trial transcript reveals the following:

MR. MARVIN: Let me ask you. With regards to the filing of the detailed descriptive list, which is the last - - and I think it's loose in there. It's not in the binder, but it's Item 5.

MR. SMITH: Okay.

MR. MARVIN: And that matter is filed in the succession proceeding; correct?

MR. SMITH: That's correct.

MR. MARVIN: It's not filed in the public conveyance records?

MR. SMITH: That is correct.

MR. MARVIN: Okay, so if you were examining the title to Mr. James Madden's property, you would have no knowledge, no way of knowing that the document exists; correct?

MR. SMITH: No, sir, not from a review of the conveyance records in the clerk's office.

MR. MARVIN: And had there been - - well, let me finish that. If that item were brought to your knowledge by me or anybody else - -

MR. SMITH: Yes, sir.

MR. MARVIN: - - and you read it as it exists, Item Exhibit 5, - -

MR. SMITH: Yes, sir.

MR. MARVIN: - - what would you do - - how would you treat that with regards to your title opinion regarding James Madden's property?

13

MR. SMITH: It - - I would list it as exception.

* * *

MR. MARVIN: How would you treat the - - your title opinion if you were writing one for James Madden's property?

MR. SMITH: I would list it as an exception.

MR. MARVIN: What does that mean?

MR. SMITH: That means we're willing to insure the title with the exception of anything that arises as to this claim made in this succession that a portion of his land is not owned by him, that there's been adverse possession, or - -

MR. MARVIN: Or at least a claim thereto?

MR. SMITH: Correct.

***

MR. MARVIN: Okay. And you examined, at my request, the tax notices that Tax Assessor Guin testified regarding - - about?

MR. SMITH: I did.

MR. MARVIN: Is that unusual for you to find as your role as an expert in title opinion?

MR. SMITH: No, sir.

MR. MARVIN: Okay.

MR. SMITH: No. Those are - - are not usual at all.

MR. MARVIN: And the fact that one assessment is reflected on the other's - - that Johnye Mae's assessment on her home is reflected on James and Lyda's assessment on their land and home?

MR. SMITH: It's not unusual. I mean, homes can be owned separately from the people who own the land. Most commonly, you find it with mobile homes, people who allow their son and daughter-in-law to put their mobile home on the property. That's the most common occurrence.

MR. MARVIN: Okay, but having looked at some of those tax assessment records, those don't jump out at your being unusual?

14

MR. SMITH: No.

*** 

From our reading of the foregoing exchanges, Mr. Smith's testimony

was based largely on hypothetical situations, including his opinion of

insuring property with a "cloud on the title." In addition, he offered his

opinion regarding the common practice of precarious possession between a

landowner and a third party. But at no time during his testimony did Mr.

Smith actually offer his opinion regarding whether or not the disputed

property actually has a cloud on the title based on Beth's filing of the

Preliminary Detailed Descriptive List. More importantly, we find the trial

court's oral reasons for judgment most persuasive, stating:

> THE COURT: I would note that of the witnesses testified, the Tax Assessor Mr. Guin and Mr. Smith, which was the expert at title examine, very little - - because, Mr. Harper, of what you stated, I do agree somewhat with you. **Very little of what was stated by them would I use in a possessory action. So I give - - although somewhat helpful, and there were things that both parties testified to that the Court was interested in, the truth of the matter is is [*sic*] the weight that their testimony would have would be small or insignificant compared to the weight that Mr. Madden's testimony would carry, as well as the testimony that Ms. Chumley placed on the record.** (Emphasis added.)

Thus, by the trial court's own admission, very little weight and

consideration were given to Mr. Smith's testimony. From our view, in

consideration of the limited substance of Mr. Smith's testimony, coupled

with the trial court's own admission that very little weight was given to that

testimony, we cannot say that the trial court erred in admitting the trial

testimony of Mr. Smith.

15

**CONCLUSION**

For the foregoing reasons, we affirm the trial court decision which denied Mary Elizabeth Chumley's exception of no cause of action and granted a judgment of possession in favor of the plaintiffs, James D. Madden and Lyda Roberts Madden. Costs of this appeal are assessed to the appellant, Mary Elizabeth Chumley.

**AFFIRMED.**