| NEW ORLEANS & GULF COAST RAILWAY COMPANY | * | NO. 2020-CA-0493 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| AMERICAN MIDSTREAM (LOUISIANA INTRASTATE), L.L.C. AND AMERICAN MIDSTREAM PARTNERSHIP, L.P. | * | STATE OF LOUISIANA |
| | * | |
| | * | |

\* \* \* \* \* \* \*

**LOBRANO, J., DISSENTS AND ASSIGNS REASONS.**

I respectfully dissent. I would affirm the district court's January 13, 2020 judgment granting, in part, the motion for summary judgment filed by the defendant, American Midstream ("Pipeline"), and against the plaintiff, New Orleans & Gulf Coast Railway Company ("Railroad"). I do not find that any genuine issues of material fact exist.

I find that the district court properly applied Louisiana property law to servitudes for the operation of a railroad and of a pipeline on certain property in Plaquemines Parish owned by landowners other than the Railroad (the "Property").[1] The district court correctly recognized three Louisiana property law principles: (1) only a full or "fee" owner can grant a servitude; (2) a fee owner can grant two distinct servitudes (one for a railroad and one for a pipeline) over the same property; and (3) under the doctrine of "correlative rights," one servitude owner has no claim or cause of action against the other servitude owner unless there is an actual, physical disturbance that prevents use of the servitude rights. *See* La. Civ. Code art. 720, La. Code Civ. P. arts. 3655-3671; *Inabnet v. Exxon Corp.*, 93-0681 (La. 9/6/94), 642 So. 2d 1243(reaffirming the doctrine of correlative rights). In *Faulk v. Union Pacific R.R.*, 2014-1598 (La. 6/30/2015), 172

---

[1] I agree with the district court's judgment to deny in part the Pipeline's motion as it relates to the four tracts of land for which the Railroad specifically claims fee ownership.

1

So. 3d 1034, the Louisiana Supreme Court held that these fundamental principles of property law apply to railroad servitudes and that railroad servitudes are not granted special treatment under the law in that they do not create ownership rights in immovable property, nor do they create an exclusive servitude right over immovable property. The district court properly applied these property law principles to the railroad servitudes and the pipeline servitudes.

The district court correctly held that, as a servitude owner, the Railroad had no claims against the Pipeline as the holder of a correlative servitude. My *de novo* review found that the Pipeline's servitude did not prevent the Railroad from exercising its rights under its servitude and operating its railroad on the Property. The Railroad produced no evidence that the operations of the pipeline has ever deprived the Railroad of its rights under the railroad servitude and its ability to operate the railroad.

Even though the petition of the Railroad did not clearly assert a possessory action, the district court properly analyzed its claims as such and found that no possessory rights existed. I also find that there is no evidence of a disturbance in fact[2] or a disturbance in law.[3] The Railroad argues that the granting of a correlative servitude deprived it of its possession of its own railroad servitude. However, I find no such evidence in the record supporting this argument. Moreover, the Railroad does not dispute that it has continued to operate its railroad on the Property without interruption since 1999. As the Supreme Court held in *Pittman v. Bourg*, 179 La. 66, 153 So. 22 (1934), a "disturbance" occurs when there is some act making clear

---

[2] According to La. C.C.P. art. 3659, "[a] disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment."

[3] According to La. C.C.P. art. 3659, "[a] disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right."

2

that the possessor's right to possess its own property is being challenged. To give rise to a possessory action, the actions of the Pipeline must disturb the Railroad's possession of its own servitude. *See Madden v. Chumley*, 52,888, p. 4 (La. App. 2 Cir. 9/25/19), 280 So. 3d 897, 901. There is no challenge to the Railroad's possession of its own, correlative railroad servitude. The Railroad failed to prove any actual, physical disturbance that prevented the use of its servitude rights. Thus, under the doctrine of correlative rights, the Railroad has no claim or cause of action against the Pipeline as the other servitude owner.

I also disagree with the Railroad's arguments that it has some standing or right to challenge the servitudes between the landowners and the Pipeline as to the location of the pipeline on certain landowners' property. There is no evidence of any such dispute between the landowners and the Pipeline. The affidavit by a surveyor interpreting the language of contracts between landowners and the Pipeline does not create such a dispute. Moreover, any dispute between a landowner and the Pipeline, even if it existed, is not material to any claim the Railroad would have against the Pipeline, because again there is no evidence that the Railroad has ever been deprived of its right to operate its railroad, regardless of where the pipeline is located. I do not find that this argument creates any genuine issues of material fact.

I also disagree with the Railroad's expansive interpretation that a servitude created through the *St. Julien* doctrine is anything other than a servitude. I agree with the Pipeline's interpretation of the *St. Julien* doctrine as an "extra-codal" method of creating a servitude noting that the method of creation is "extra-codal," not the servitude itself. The Pipeline correctly asserts that once created, "a servitude is a servitude, and it is governed by Louisiana property law."

Finally, the district court properly dismissed all of the Railroad's alternative claims as to the Property, including any potential contract claims. The only

3

potential contract claim asserted by the Railroad relates to the provision in the "Longitudinal Pipeline Encroachment Agreement" (the "Agreement") between the Railroad and the Pipeline that purportedly requires the removal of the pipeline at the end of the Agreement. That provision was based on the Railroad's mistaken contention that the Railroad, and only the Railroad, can give the Pipeline the right to operate on the Property. That contention is contrary to the law. The Pipeline has the right to operate its pipeline on the Property pursuant to the servitudes granted by the landowners. The Railroad has no legal authority to demand removal of that pipeline from the Property when the Pipeline has the legal right to operate on the Property. This unfounded contract claim does not interfere with the granting of the Pipeline's motion for summary judgment.